[No. 1645.   Decided February 12, 1895.]

J. N. GLOVER, *Respondent*, v. THE ROCHESTER-GERMAN INSURANCE COMPANY, *Appellant*.

ASSIGNMENT BY CORPORATION — VALIDITY — INSURANCE — APPRAISEMENT OF LOSS — BIAS OF APPRAISER — ESTOPPEL — INTEREST UPON LOSS — FINDINGS OF COURT.

An assignment of a claim under an insurance policy, made by the president and general manager of a corporation without being authorized by the board of directors, is valid when subsequently ratified by all the stockholders.

An award made by appraisers selected to appraise the loss incurred by the insured should be set aside when it appears that the award was grossly inadequate and that the appraiser selected by the insurance company exercised a controlling influence over the other appraiser and the umpire, and proceeded as though he was engaged solely in the interest of the insurance company for the purpose of getting the award made as low as possible, instead of acting as a disinterested and impartial judge.

A party who has submitted a matter in dispute to arbitration is not estopped from revoking the submission and repudiating the award, when the bias and prejudice of one of the arbitrators was unknown at the time of submission, and knowledge thereof only

developed during the progress of the arbitration, as a consequence of his conduct, taken in connection with the inadequate amount allowed.

The finding of the trial court as to the loss incurred by the insured will not be disturbed when the evidence is conflicting, and there is some evidence to sustain the finding, while there is none which would enable the appellate court to arrive at a more satisfactory conclusion.

A provision in a policy of fire insurance that, in case of a difference of opinion as to the amount of the loss, payment is not to be made until sixty days after proofs of loss are submitted, is waived by an agreement to arbitrate, and the insured is entitled to interest upon the amount of his loss from the time it occurred.

*Appeal from Superior Court, Spokane County.*

*Turner, Graves & McKinstry* (*Van Ness & Redman,* of counsel), for appellant:

All acts relied upon to vitiate an award must be directly and specifically alleged. Bigelow, Fraud, 450; *Phillips v. Phillips,* 81 Ky. 147.

Appraisers appointed pursuant to the original contract of insurance to appraise, and estimate, and determine, the amount of loss and damage by the fire, do not give notice of their meetings nor hear the parties upon the questions submitted to them. They determine the matter in dispute upon their own judgment and upon such evidence as they may think proper to take. *Norton v. Gale,* 95 Ill. 533 (35 Am. Rep. 173); *M. E. Church v. Seitz,* 74 Cal. 287. The fact that an appraiser selected by the insurance company had previously performed similar duties would not disqualify him in the absence of a representation that he had not so acted. *Fox v. Hazelton,* 10 Pick. 275; *Goodrich v. Hulbert,* 123 Mass. 190 (25 Am. Rep. 60); *Cheney v. Martin,* 127 Mass. 304; *Bradshaw v. Insurance Co.,* 137 N. Y. 137.

In the absence of proven misconduct, an award will

not be set aside merely because it allows less than the true damage. *Boston Water Power Co. v. Gray,* 6 Metc. 131; *Underhill v. Van Cortlandt,* 2 Johns. Ch. 339; *Hartford Fire Ins. Co. v. Bonner M. Co.,* 56 Fed. 378. The judgment of the arbitrators upon questions submitted to and determined by them is conclusive. *Learned v. Bellows,* 8 Vt. 79; *Alken v. Bolan,* 2 Am. Dec. 660; *Jocelyn v. Donnel,* 14 Am. Dec. 753.

If the defendants, or their agents, or the appraisers, were guilty of misconduct during the appraisement, it was the duty of the mercantile company and its officers then and there to protest, and if their protest was not regarded, to discontinue participation in the appraisement. And failing so to do, they cannot, after the appraisement is concluded, and the result announced, be heard to allege as misconduct that which they tolerated in the hope of a better result. *Fox v. Hazelton,* 10 Pick. 275; *Noyes v. Gould,* 57 N. H. 20; *Insurance Co. v. Brehm,* 88 Ind. 578.

A submission pursuant to an agreement that some particular question of fact shall be determined by arbitration is not revocable. The rules relative to arbitration proper do not control this class of submissions. *Norton v. Gale,* 95 Ill. 533 ( 35 Am. Rep. 173 ); *M. E. Church v. Seitz,* 74 Cal. 287. It has been repeatedly held that where a policy of fire insurance contains a provision to the effect that a difference arising as to the amount of the loss shall be determined by appraisers appointed, etc., the ascertainment of that question must be in the mode contracted — that ascertainment in that mode, unless waived, is a condition precedent to a right of action upon the policy. *Hamilton v. Ins. Co.,* 136 U. S. 242; *O. S. L., etc., Co. v. Assurance Co.,* 66 Cal. 253; *Adams v. Ins. Co.,* 70 Cal. 198; *Carroll v. Girard Fire Ins. Co.,* 72 Cal. 297; *Gauche v.*

10 — 11 WASH.

*Ins. Co.*, 10 Fed. 347; *Ins. Co. v. Wolff*, 14 Atl. 561; *Hanover Ins. Co. v. Lewis*, 10 South. 297; *Gasser v. Sun Fire Office*, 44 N. W. 252.

*Nash & Nash*, for respondents:

Persons selected as appraisers and arbitrators should be indifferent between the parties. They should be impartial judges. *Pool v. Hennessay*, 39 Iowa, 192 (18 Am. Rep. 44); *Moshier v. Shear*, 102 Ill. 169 (40 Am. Rep. 573); *Sullivan v. Fink*, 3 Iowa, 66. Courts closely scrutinize the action of arbitrators, as they are the agents of both parties alike, and impartiality is the fundamental requisite. *Bradshaw v. Agricultural Ins. Co.*, 137 N. Y. 137; *Sweet v. Morrison*, 116 N. Y. 29 (15 Am. St. Rep. 376); *Ætna Ins. Co. v. Stevens*, 48 Ill. 32.

When an arbitrator acts without sufficient evidence, or without a full hearing, of a case submitted to him, his award is void for misconduct. *Hartford Ins. Co. v. Bonner Mercantile Co.*, 44 Fed. 151; *Canfield v. Ins. Co.*, 55 Wis. 419 (13 N. W. 252); *Van Cortland v. Underhill*, 17 Johns. 405; *Day v. Hammond*, 57 N. Y. 479 (15 Am. Rep. 522). The failure of the arbitrators to give notice of the time and place of estimating the amount of goods totally consumed to respondent and his assignor, renders the award void and invalid. *Curtis v. Sacramento*, 64 Cal. 102; *Emery v. Owings*, 48 Am. Dec. 582. This is a common law submission to arbitration. The arbitrators derived their power to act simply from the continuing consent of the parties, and when the agreement, while yet executory, is broken by the refusal of a party to be bound by or to perform it, the power of the arbitrators ceases. *People, ex rel. Ins. Co., v. Nash*, 111 N. Y. 310 (7 Am. St. Rep. 747). Bad faith on the part of the appellants in the

choice of an arbitrator releases respondent from any further appraisal or arbitration. *Uhrig v. Williams Ins. Co.*, 101 N. Y. 362; *Bishop v. Ins. Co.*, 130 N. Y. 488.

According to the terms of the policies the loss was payable sixty days after due notice and proofs were furnished of the same. The appellants, by demanding and going through an arbitration proceeding, waived this sixty-day stipulation, *pro se introductum* in the policies and the furnishing of proofs of loss, and interest was set running from the day of the fire. *St. Paul Fire Ins. Co. v. Gotthelf*, 53 N. W. 138; *Snowden v. Kittanning Ins. Co.*, 122 Pa. St. 502; *Cascade Ins. Co. v. Journal Pub. Co.*, 1 Wash. 453.

The opinion of the court was delivered by

SCOTT, J.—This was an action upon an insurance policy to recover for a loss by fire. A number of other cases are by stipulation made dependent upon this one. The Spokane Mercantile Company was a corporation engaged in business at the city of Spokane in this state, and had taken out insurance policies upon its stock of merchandise in various companies, to the amount of $52,000. On the 9th day of January, 1893, said stock was greatly damaged and partly destroyed by fire. The defendant company had issued one of said policies in the sum of $1,000.

It is alleged in the complaint that the several claims were by said mercantile company assigned to the plaintiff. It is further alleged that the value of said stock of goods at the time of said fire was the sum of $73,254.77, and that the loss to said company by reason of said fire was the sum of $60,575. That said mercantile company and the defendant were unable to agree upon the amount of the loss sustained, and

thereupon and in pursuance of policy conditions, an agreement was entered into whereby the question of the sound value of said goods at the time of said fire and the damage thereto by reason thereof was submitted to two appraisers and an umpire; one of which appraisers, A. A. Brann, was selected by the insured, the other, Hyman Lippman, by the defendant, and the umpire, E. Dempsie, by the two appraisers. That the said arbitrators, in pursuance of said agreement, made an appraisement of said stock and determined that the sound value thereof at the time of the fire was the sum of $50,319.84, and the damage thereto by reason of said fire was the sum of $24,560.45. The action was brought to set aside this award and to recover judgment for the full amount named in said policy.

One of the grounds upon which such relief was sought is as follows: It is charged that the defendant represented to said Spokane Mercantile Company that the said Lippman was competent, fair and disinterested; that he was unknown to the insured; that relying upon said representation it assented to his selection as such appraiser; that in fact said Lippman was neither competent, fair nor disinterested; that he was biased and interested toward and on behalf of the defendant; that he had been previously employed by the defendant to act as an appraiser in similar cases; that the defendant fraudulently concealed from said mercantile company the fact that said Lippman had been previously employed by the defendant in a similar capacity, and that he was biased in its behalf; and that the said award so rendered was unjust and unfair to the insured, and was procured by the defendant through fraud and collusion and undue and improper means and influence; that prior to the time said award

was signed, the said insured repudiated said appraisal and rescinded said agreement of submission thereto.

The answer denied that the value of the stock on hand at the time of the fire was any greater than the sum of $50,319.45; that the mercantile company repudiated the appraisal or rescinded the agreement of submission prior to the signing of the award, or at any time; and denied the assignment of the policy to the plaintiff on information and belief; and plead as an estoppel full knowledge on the part of said mercantile company of the manner in which said appraisal was carried on, and of the conduct and actions of the appraisers in connection therewith, at the time.

Certain other matters were alleged and denied which are not material to the controversy. The case was tried before the court sitting without a jury; a decree was rendered in favor of the plaintiff, vacating the award and adjudging the loss of plaintiff's assignor to have been $45,000; and judgment was entered against the defendant for its proportionate share thereof. Both parties appealed therefrom. The appeal of the insurance company will be first considered.

It is contended that the purported assignment of said claim to the plaintiff was invalid on the ground that it was never authorized or ratified by the board of directors. The assignment was made by Brockhausen, the president and general manager of the mercantile company. It appeared that the stock of said corporation was all owned by said manager and one other person, and that said other stockholder advised and ratified the assignment. We think this was sufficient to constitute a valid assignment of the claim to the plaintiff.

It is next contended that, upon the merits, the award should be sustained, and the consideration of this ques-

tion involves several features of the case. First, as to the disqualification of Lippman to act as an appraiser upon the ground of bias. The policy provided in this respect, that the appraisers should be competent and disinterested, and to satisfy this requirement they should have been indifferent between the parties and impartial judges. It does not appear that Lippman had been previously employed to act as an appraiser by the defendant company, although he had acted in that capacity on two occasions for other companies. We do not attach any importance to this, and it does not appear that the lower court did. Said court, however, found as a fact that Lippman was biased and prejudiced in favor of the defendant. There was testimony to show that Lippman exercised a continual controlling influence over the other appraiser and the umpire, and substantially had matters his own way. It also appears that at various times during the making of such appraisement Lippman made statements to the effect that he was working for the insurance companies, and that it was their stock; that they were buying the stock; that he had several altercations with Brockhausen, cursed him and ordered him out of the store, and that he said: "Every time Brockhausen interferes it will cost the Spokane Mercantile Company something;" that he was there to look after the interests of the insurance companies, and he proposed to do it; that he was well paid by the insurance companies to look after their interests; that they could well afford to pay him good wages, for he was of great benefit to them, and they well knew it. There was testimony to show that Lippman was very domineering throughout the entire proceeding; that he seemed to understand that he was there especially in the interests of the insurance companies for the purpose of getting the award

made at as low a figure as possible; and said that he was acting for the insurance companies, and that Mr. Brann was there to represent the mercantile company.

We think the statements and conduct of Lippman were such, taken in connection with the fact that the award was such a grossly inadequate one, which we shall further consider on the question of the amount of damages, as to justify the lower court in finding that Lippman was biased and prejudiced as charged.

And the next question is, was the right to have the award set aside on that ground lost or waived by the mercantile company in consequence of not making timely objection?

Cases have been submitted by appellant holding that partiality, interest or relationship on the part of an arbitrator is no ground for setting aside an award, if the party complaining had knowledge of the facts when he agreed to submit the cause to arbitration, or in time to revoke the submission before the award was made. This rule is undoubtedly sound, and can be, applied without difficulty where a single fact like that of interest or relationship is involved, as the discovery of that one fact prior to, or during the progress of, the proceedings would afford complete and unmistakable knowledge to the party.

There is more difficulty, however, when considered with reference to the partiality or prejudice of an arbitrator which was not known at the time of the submission; for sufficient notice of this might not be given by any single act or expression of the arbitrator, and might only appear from numerous acts or his entire conduct in the matter; and it might be difficult to say just at what particular time the complaining party had obtained sufficient knowledge of such partiality or prejudice when, if he did not object, he should

be held to be estopped from thereafter raising the question.

It appears by the undisputed testimony in the case that Lippman was entirely unknown to the officers and agents of the mercantile company at the time he was agreed upon as an arbitrator. It further appears that he was highly recommended to them as a qualified, fair and disinterested person by the agents of the insurance companies; and relying upon these representations the mercantile company accepted him as an arbitrator. Before arranging for the arbitration it appears that the officers of the mercantile company were asked by the agents of the insurance companies who were upon the ground, if they could not agree upon the amount of the loss, and were answered that they probably could as there should be no difficulty in arriving at it; and that it was agreed that the mercantile company should submit a statement of the amount claimed, and that the agents of the insurance companies would make out a statement of what they admitted the loss to be. In pursuance of this understanding a detailed statement by the mercantile company was made out and submitted to the insurance companies.

It further appears that Nash, who was the larger stockholder in the mercantile company, and was an attorney at law, had principal charge of the proceedings for the mercantile company, and that he was seldom present and took no active part in the appraisement; and it does not appear that he knew of all the statements and acts aforesaid of Lippman during the progress of the proceedings.

It further appears that prior to and while the parties were negotiating with regard to an agreement as to the amount of the loss, with a view to adjusting the

same without an arbitration, the agents of the insurance companies were communicating by telegraph with other officers of said companies at San Francisco, whereby they were asking to have one of certain persons mentioned immediately sent to Spokane for the purpose of acting as an arbitrator.    These telegrams, with two others in connection therewith, which were sent while the arbitrators were at work, are as follows:

"Feb. 7th, '93.

" Dated Spokane, Wash. 7.

"*To Liverpool London & Globe Ins. Co., S.:*

" Send Treanor or Godfrey Fisher at once.

FRANK H. SWETT."

"S. F. Feb. 7, 1893.

"*To Frank H. Swett, Spokane, Wn.:*

"Appraiser will leave Wednesday night unless further advised.          LIVERPOOL LONDON GLOBE."

"*Liverpool London Globe:*

" Your telegram this 27 to Frank H. Swett, Spokane, Wn., is undelivered.    Swett left for Ft. Sherman, Idaho.                            RECEIVER."

"S. F. Feb. 8th, 1893.

"*To F. H. Swett, Spokane, Wn.:*

" Trainor and Fisher both engaged, Lippman leaves tonight; should arrive Saturday morning.

LIVERPOOL LONDON GLOBE."

"S. F. Feb. 20th, 1893.

"*To F. H. Swett, Spokane, Wn.:*

"Our appraiser double price; do not hold him too long.                      C. MASON KINNE."

"Feb'y. 21st, '93.

" Dated Spokane, Wash., 21st.

"*To Col. C. Mason Kinne, N. E. Cor. Cala. & Leidesdorff:*

"Case very bad; progressing rapidly as possible. Appraiser worth price.          FRANK H. SWETT."

This would indicate strongly that the insurance companies were desirous of having some one particular person, who had previously shown his ability to act in that capacity to their satisfaction and advantage, on the ground to serve as one of the arbitrators. It is also difficult to understand why such a person should be sent to Spokane while negotiations looking to an agreement were in progress, as was done, if the companies were proceeding in entire good faith. It would rather look as though there was an attempt to get some advantage of the mercantile company in the premises. When the estimate of the goods lost and damaged, and the amount claimed therefor, was submitted by the mercantile company, the agents of the insurance companies refused to agree thereto. It does not appear that they made any proposition themselves, but they insisted on an appraisement by arbitrators under the conditions of the policy. These communications by telegraph were unknown to the officers and agents of the mercantile company at the time they passed between the agents of the insurance companies at Spokane and the officers of the companies at San Francisco; nor does it appear that they obtained any knowledge with regard thereto prior to the commencement of this action, the same being developed thereafter in an examination of one of the witnesses.

The fact that Lippman was biased and prejudiced in favor of the insurers is predicated upon his entire conduct during the proceedings, his acts and statements, and the influence shown to have been exercised by him over the other arbitrators, all taken in connection with the inadequate amount allowed.

With these matters in view, we do not think that the mercantile company should be charged with having obtained sufficient knowledge thereof during the

progress of the arbitration to preclude it from raising the objection to the award upon that ground.

It further appears that after the arbitrators had concluded their investigation, but before signing the award, Nash found fault because they had taken no proof with regard to the goods which were totally consumed, and stated that they had nothing before them upon which they could satisfactorily base an award in that particular, and announced that the mercantile company would not be bound thereby. The arbitrators, however, were at this time at work upon their award, and it was soon thereafter made; whereupon it was immediately repudiated by the mercantile company. The inadequacy of the award itself was an important factor, entitled to consideration in determining the bias and prejudice of Lippman under the circumstances. This is supported by the case of *Bradshaw v. Ins. Co.*, 137 N.Y. 137 (32 N.E. 1055), which was a case very similar to the one before us.

We are of the opinion that the objection to the award on the ground stated was made in time, and there being competent evidence to sustain the finding of the lower court that Lippman was biased and prejudiced in favor of the insurance companies, that finding will not be set aside.

The next contention is as to the amount of the recovery, and the consideration of this question embraces the plaintiff's appeal also. The plaintiff contends that the only proof as to the amount of the loss was the testimony of some of the clerks of the mercantile company, who testified that the value of the goods damaged and destroyed exceeded the sum of sixty thousand dollars, and consequently the lower court should have rendered judgment for the full amount of the insurance.

The defendant contends that the best proof as to the amount of the loss was furnished by the investigation and return of the appraisers aforesaid, and both parties insist that there was no evidence to support the amount found by the lower court. The damage to the goods that were not totally destroyed could be fairly well ascertained, and also the goods that were totally destroyed, except those belonging to the dry goods department. The book containing a record of the stock of dry goods was consumed in the fire, and the principal loss occurred in this department; so that it is impossible to determine accurately the quantity and value of the dry goods consumed. We are satisfied that it was considerably more than the amount found by the appraisers, and we are not satisfied that it was as much as the plaintiff claimed, and the lower court was, doubtless, in the same predicament.

There was some other proof, however, to which the lower court could, and probably did, resort in arriving at the amount of the damage in this particular. The amount of the dry goods totally consumed was confined to a certain space on one side of the store room, and proof was submitted by the respective parties to show the quantity, quality and value of the goods contained in this space. One of the estimates of the amount of the loss here was made by apportioning to this burned space its proportion of the whole stock of dry goods, determined with reference to the entire space occupied by the goods belonging to that department. Another estimate as to the amount of the loss in this particular could be made from certain testimony relative to the purchases, sales and profits of the mercantile company during the time it had been in business. The proof was uncertain, conflicting and unsatisfactory as to all of the foregoing, and it would

be difficult to make a satisfactory computation therefrom. We do not know how the lower court computed it. We might undertake a computation and arrive at a different result, but we do not think it would be as reliable and satisfactory as the amount found by the lower court, for that court had the advantage of hearing many of the witnesses testify; and there being some evidence to sustain the finding, and none by which we could arrive at a more satisfactory conclusion, the finding of the lower court should not be disturbed.

The last contention is as to the date from which interest should be allowed. The plaintiff in his complaint prayed for interest from March 29, and the court allowed interest therefrom. The policies provided, in case of a difference of opinion between the insurer and the insured as to the amount of the loss, for payment sixty days after proofs of loss were submitted. But this clause was for the benefit of the insurer and, by agreeing to arbitrate, it was waived, and there was no error in allowing interest from the time it was prayed for. *Cascade, etc., Ins. Co. v. Journal Pub. Co.*, 1 Wash. 452 (25 Pac. 331); *St. Paul Fire, etc., Ins. Co. v. Gotthelf*, 35 Neb. 351 (53 N. W. 137); *Snowden v. Kittanning Ins. Co.*, 122 Pa. St. 502 (16 Atl. 22); *Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp.*, 61 Fed. 237.

The judgment of the lower court is affirmed.

HOYT, C. J., and DUNBAR, GORDON and ANDERS, JJ., concur.