[No. 4815. Decided January 6, 1904.]

J. EUGENE JORDAN *et al., Appellants,* v. E. LOBE, *Respondent.*[1]

ARBITRATION—TIME FOR AWARD LIMITED. Where an agreement for an arbitration expressly limits the time within which the award is to be made, the power of the arbitrators expires at the end of the time limited unless the same is extended or waived.

SAME—WAIVER OR EXTENSION OF TIME LIMIT. Where, after the hearing on an arbitration in which the time for making an award was limited to twenty days, it was agreed that the award need not be considered until one of the arbitrators could go to Alaska and return, without anything being said about how long the

[1]Reported in 74 Pac. 817.

trip would take, and he returned two days before the time expired, but nothing was done to make the award until more than twenty days after such return, whereupon one of the parties served notice of a revocation of the arbitration, an award made thereafter is void, and the court is without jurisdiction to affirm it.

SAME—REVOCATION—NOTICE OF DECISION—EVIDENCE. If such notice of revocation was necessary prior to knowledge of the determination in order to avoid a waiver of the time limit by silence, such waiver will not be found unless established by a preponderance of the evidence when notice of revocation was given before the award was filed or definitely settled upon.

Appeal from an order of the superior court for King county, Morris, J., entered May 5, 1903, quashing an award made by a board of arbitration.    Affirmed.

*Allen, Allen & Stratton,* for appellants.    The effect of our statute is to make every submission a statutory arbitration.    *Bridgman v. Bridgman,* 23 Mo. 272; *Tucker v. Allen,* 47 Mo. 488; *Cochran v. Bartle,* 91 Mo. 636, 3 S. W. 854.    Upon a statutory arbitration the award can be set aside only for the causes specified in the statute. *Carlsley v. Lindsay,* 14 Cal. 390; *Patrick v. Batten,* 123 Mich. 203, 81 N. W. 1081; *Neely v. Buford,* 65 Mo. 448. Such is the effect of our own decisions.    *Zindorf Const. Co. v. West American Co.,* 27 Wash. 31, 67 Pac. 374; *Skagit County v. Trowbridge,* 25 Wash. 140, 64 Pac. 901; *Van Horne v. Watrous,* 10 Wash. 525, 39 Pac. 136.    Time is not of the essence of the contract, and without a showing of injury, delay will not vitiate the award.    *Eifert v. Wolf,* 19 Ky. Law 507, 41 S. W. 6; *Patrick v. Batten, supra.*    The time was extended with the consent of all parties.    *Bachelder v. Wallace,* 1 Wash. Ter. 107; *Wood v. Tunnicliff,* 74 N. Y. 39.    Even when time is made of the essence, a waiver of exact performance allows a reasonable time.    *Distler v. Dabney,* 7 Wash. 431, 35 Pac.

138, 1119; *Thacker Wood & Mfg. Co. v. Mallory,* 27 Wash. 670, 68 Pac. 199; *Battelt v. Matot,* 58 Vt. 271, 5 Atl. 479; *Henderson Bridge Co. v. O'Conner,* 88 Ky. 303, 11 S. W. 18, 957; *Smith v. Corn,* 23 N. Y. Supp. 326. Objection to the postponement of the award should have been made at the time of its announcement. *Vandall v. Vandall,* 13 Iowa 247. A waiver will be inferred from the silence of a party. *In re Conner* (Cal.), 60 Pac. 862. Statutory arbitrations can not be revoked after the proceedings have begun. *Buckwalter v. Russell,* 119 Pa. St. 495, 13 Atl. 310; *Shroyer v. Bash,* 57 Ind. 349; *Bash v. Christian,* 77 Ind. 290; *Dexter v. Young,* 40 N. H. 130; *Carey v. Com'rs Montgomery County,* 19 Ohio 245. A common law arbitration can not be revoked by a party after receiving notice that the decision will likely be adverse to him. *Coon v. Allen,* 156 Mass. 113, 30 N. E. 83.

*Leopold M. Stern* and *Piles, Donworth & Howe,* for respondent. The statute does not exclude the right to arbitrate at common law, but the methods are distinct and cumulative. *Foust v. Hastings,* 66 Iowa 522, 24 N. W. 22; *McClelland v. Hammond,* 12 Colo. App. 82, 54 Pac. 538; *New York Lumber Co. v. Schnieder,* 119 N. Y. 475, 24 N. E. 4; *McCune v. Lytle,* 197 Pa. St. 404, 47 Atl. 190; *Burnside v. Whitney,* 21 N. Y. 148; *State v. Jackson,* 36 Ohio St. 281; *Galloway v. Gibson,* 51 Mich. 135, 16 N. W. 310; *Dockery v. Randolph,* (Tex.) 30 S. W. 270; *Powers v. Douglass,* 53 Vt. 471, 38 Am. Rep. 699; *Payne v. Crawford,* 97 Ala. 604, 11 South. 724. The submission not complying with the statute, the award can be sustained only in case it is a good award under a common law arbitration. *Franklin Min. Co. v. Pratt,* 101 Mass. 359; *Northwestern Guaranty Co. v. Channell,* 53 Minn. 269, 55 N. W. 121; *Barney v. Flower,* 27 Minn.

403, 7 N. W. 823; *Gibson v. Burroughs,* 41 Mich. 713, 3 N. W. 200; *Burkland v. Johnson,* 50 Neb. 858, 70 N. W. 388; *Moody v. Nelson,* 60 Ill. 229; *Fink v. Fink,* 8 Iowa 313; *Holdridge v. Stowell,* 39 Minn. 360, 40 N. W. 259; *Burghardt v. Owen,* 13 Gray 300. The arbitrators' authority ceases at the end of the time limited in the agreement. *Bent v. Erie Telegraph Co.,* 144 Mass. 165, 10 N. E. 778; *Franklin Min. Co. v. Pratt,* 101 Mass. 359; *Custy v. City of Lowell,* 117 Mass. 78; *Abbott v. Dexter,* 6 Cush. 109; *Heath v. Tenney,* 3 Gray 381; *Ryan v. Dougherty,* 30 Cal. 219; *White v. Kemble,* 3 N. J. L. 53; *Burnam v. Burnam,* 6 Bush 389.

MOUNT, J.—In January, 1902, the appellants and respondent entered into the following contract of arbitration:

"MEMORANDUM OF AGREEMENT, made and entered into this —— day of January, A. D. 1902, by and between J. Eugene Jordan, Histogenetic Medicine Co. and Sea Level Mining & Milling Co., first parties and E. Lobe, second party. WITNESSETH: That, whereas, disputes have arisen between first parties and second party which said parties desire to settle without any great litigation and by arbitration: It is therefore agreed:

"First. That said matters so in dispute shall be submitted to a board of arbitration consisting of three arbitrators, said board to be composed of Harris Lewis, selected by first parties, E. C. Neufelder, selected by the second party, and a third arbitrator to be selected by said Lewis and Neufelder.

"Second. The questions submitted to said board of arbitration and to be determined by them are the following, to wit: (1) How much, if anything, is due from second party to first parties on account of the stock of the Sea Level Mining & Milling Co., sold by second party in the state of California? (2) How much, if anything, is due from second party to first parties, or either of them, on account of stock of the Sea Level Mining & Milling

Co., sold by second party in the state of New York?
(3) How much, if anything, is due from second party to
first parties, or either of them, on account of, or by reason
of, certain gold ore specimens delivered by J. Eugene Jordan, one of the first parties, to second party, and which
first parties claim have not been returned?

"Third.    Immediately upon the signing of this agreement the said arbitrators, Lewis and Neufelder, shall proceed to agree upon a third arbitrator, who, with the said
Lewis and Neufelder shall constitute the board of arbitration; and when said third member of said board shall have
been selected as aforesaid, the said board shall immediately
proceed to the determination of the questions heretofore
submitted to them.

"For the purpose of determining said questions, said
board shall have the right to examine witnesses and hear
evidence and to take the course usually taken by courts of
justice in determining questions of law and fact, and the
decision of two of said arbitrators upon any questions
hereinbefore submitted shall constitute the decision of the
board and such decisions upon any and all of said questions shall be final, binding and conclusive upon the parties hereto.    Said board of arbitration shall render its
decision in writing within twenty days after said third
arbitrator shall have been selected.    Said decision shall
be rendered in writing, signed by the arbitrators, or a
majority of them, and a copy of said decision shall be
given to each of the parties hereto immediately it shall
have been rendered.

"In witness whereof the parties hereto have hereunto
set their hands, the day and year herein first named."

Pursuant to this agreement, and on May 23, 1902, the
arbitrators named therein agreed upon and appointed F. C.
Johnstone as a third arbitrator.    These arbitrators then
immediately proceeded to hear evidence of the respective
parties.    When the evidence was closed, Mr. Johnstone
announced to the parties that it was necessary for him to
leave the state of Washington and go to Alaska, and that
it would be impossible for him to consider the award until

after his return. This was agreed to by all the parties.
Johnstone thereupon left the state and returned on June
11, 1902. Nothing was done further in the case until
about July 7, 1902, when Johnstone called upon respond-
ent for certain books of account which he, Johnstone, de-
sired to consult in determining the award. On July 10,
1902, respondent served on appellants a notice of revoca-
tion of the arbitration. Five days later, on July 15, two
of the arbitrators, Mr. Lewis and Mr. Johnstone, filed
with the clerk of the superior court their award in favor
of the appellants.

Subsequently the respondent moved the superior court
to quash the award, (1) because it was not made within
the time limited by the agreement, and (2) because the
court had no jurisdiction in the case. A number of ex-
ceptions to the award were also filed by respondent, alleg-
ing technical irregularities. Appellants thereupon filed
answers to the exceptions, alleging that respondent had
waived the alleged irregularities. In answer to the mo-
tion above referred to, appellants alleged,

"That when said Johnstone announced that it was neces-
sary for him to go to Alaska, it was agreed between all the
parties to said arbitration that they might make their
award after his return, and that it was well understood
that he could not return until the expiration of more than
twenty days; that after his return the arbitrators took up
the matter with the knowledge of said defendant [respond-
ent], who made no objection thereto until after they had
reached their conclusion as to what said award should be,
and that he only objected when he learned that said award
would be adverse to him."

The questions thus presented to the lower court appear
to have been tried on affidavits. The court, upon the
hearing, found that it was without jurisdiction to enter
judgment upon the award, and therefore sustained re-

spondent's motion, and entered an order quashing the award.

A number of technical questions are argued in the briefs, but the controlling one, and the only one necessary to be decided here, is the question relating to the revocation of the authority of the arbitrators. Whether this agreement was a statutory contract or a common law contract is immaterial in this case, because it was a good and binding contract in either event, and, like other contracts entered into upon good and sufficient consideration, should be performed according to its terms. Under the statute, as well as under the common law, the parties were at liberty to agree upon such conditions as they desired, and it was the duty of the arbitrators to determine the cause "agreeably to the terms of the submission." Section 5104, Bal. Code. It was specially agreed between the parties that "said board of arbitrators shall render its decision in writing within twenty days after said third arbitrator shall have been selected." It is not necessary for us to inquire why this limitation was placed in the contract. The parties agreed to it, and thus limited the time within which the arbitrators were bound to make their award. The rule governing awards, where the time is fixed by the contract of submission, is stated in 3 Cyc., p. 631, as follows:

"Whenever by the terms of the submission, either at common law or under rule of court, the award is required to be made within a specified time, the authority of the arbitrators terminates upon the expiration of the time specified."

See, also, 2 Am. & Eng. Enc. Law (2d ed.), p. 696; *Ryan v. Dougherty,* 30 Cal. 218; *Conrad v. Johnson,* 20 Ind. 421; *Bent v. Erie Telegraph Co.,* 144 Mass. 165, 10 N. E. 778; *Burnam v. Burnam,* 6 Bush (Ky.) 389.

The third arbitrator was selected on May 23, 1902. Under the rule above stated, the authority of the arbitrators to make an award in this case ceased on June 13, 1902, unless the time was extended, either by express stipulation or by waiver of the time limit. It is not contended that the time was extended by express stipulation; but it is alleged that the parties agreed that one of the arbitrators might go to Alaska, and that the award might be made after his return, "and that it was well understood that he could not return until after the expiration of more than twenty days."

The evidence is conflicting as to what was understood about the length of time Johnstone was to be gone. It nowhere appears in the record that there was any statement made by any one at any time as to how long the trip to Alaska would take Mr. Johnstone; but it is undisputed that he returned from Alaska "not later than June 11," which was at least one day within the time fixed by the agreement for the award to be made. The award was not made within the twenty days, nor for more than twenty days after his return. The record conclusively shows that none of the parties or the arbitrators took any steps, or paid any attention to the matter of arbitration, until July 7, 1902, at which time Mr. Johnstone called upon respondent for some books which he desired to consult in determining his award; and that three days thereafter, and before any award was filed, respondent served notice of revocation of the agreement.

If it may be conceded that silence shall be construed into an implied waiver of the time limit fixed by the parties, and that, therefore, it is necessary for a party, who desires to terminate the authority of arbitrators, to notify the other party of such desire before an award is made, in that event the appellants must fail because such notice

was given before the award was made or filed.    To avoid
this notice, however, it is argued that the respondent had
knowledge of the award, and only objected when he learned
that the award would be adverse to him.

We think the record fails to show that respondent knew
what the award was to be, before he served his notice of
revocation.    It is true that three of the affidavits filed by
the appellants state that prior to the 10th day of July,
1902, "the said E. Lobe well knew what the award of said
arbitrators was to be, and well knew that they had agreed
thereto."    No facts are stated showing how or why he
knew, or from whom he obtained this information.    Mr.
Lobe, however, says that he was told by Mr. Johnstone on
July 7, 1902, that the award had not then been settled
upon, and that on July 10 he did not know what the award
was to be.    Mr. Neufelder, one of the arbitrators, makes
an affidavit in which he states "that on the 10th day of
July, 1902, the award of the arbitrators had not yet been
definitely settled upon; that while the general sentiment
of the arbitrators was known among themselves, the exact
amount which was to be awarded had not yet been agreed
upon."

Upon the face of the record, the court appeared to be
without jurisdiction to affirm the award, because it was
made without the time agreed upon by the contract.    If
there had been a waiver of the time limit, it devolved upon
appellants to show it by a preponderance of the evidence.
The affidavits are not sufficient for that purpose.    Upon
any view of the case, we think the lower court was right
in quashing the award.

The judgment is therefore affirmed.

FULLERTON, C. J., and DUNBAR, ANDERS, and HADLEY,
JJ., concur.