[No. 8894.   Department Two.   August 5, 1910.]

## H. G. Richardson, *Plaintiff and Appellant*, v. Nellie Harkness *et al.*, *Defendants and Appellants*.[1]

Appeal—Dismissal—Briefs. A motion to dismiss an appeal submitted on briefs which makes no showing of the facts or record relied on to support the same will not be considered on appeal.

Executors and Administrators—Contracts of Decedent — Specific Performance. An option to purchase land contained in a lease, the lessee being the owner of premises thereon may be specifically enforced, in probate, after death of the lessor, under Rem. & Bal. Code, § 1610, providing for the specific performance of contracts by decedents.

Vendor and Purchaser—Options—Consideration. An option in favor of a lessee to purchase the land at any time during the life of the lease is supported by a sufficient consideration.

Specific Performance—Options—Price—Arbitration — Determination of Value. Specific performance may be decreed of an option to purchase land at a reasonable price, although it provides for an appraisement by two arbitrators, and if they cannot agree, by a third selected by them; and where the arbitrators are unable to agree upon the value or to select a third arbitrator, the value may be fixed by the court.

Cross-appeals from a judgment of the superior court for Thurston county, Rice, J., entered November 29, 1909, decreeing the specific performance of a contract to convey real

[1]Reported in 110 Pac. 9.

property and determining the value thereof, after a hearing
on the merits before the court.   Affirmed.

*S. P. Richardson* and *Troy & Sturdevant*, for plaintiff.

*J. W. Robinson* and *R. H. Fry*, for defendants.

*Thomas M. Vance* and *Harry L. Parr*, for respondent ad-
ministrator Crosby.

Dunbar, J.—On August 20, 1907, Edward Harkness and
wife gave H. G. Richardson a lease of block 52 of Olympia,
the same being community property, the lease to run from
January 1, 1908, to January 1, 1910.   Richardson was to
pay $25 per month rental.   Among other things, the lease
has the following provision:

"It is further agreed and understood between the parties
hereto that the said party of the second part is the owner of
the buildings on said premises and at the end of this lease
the said party of the second part shall have the right to
remove said buildings if he shall so elect.   It is further agreed
by and between the parties hereto that the party of the
second part, his heirs or assigns, has the right to purchase
the property herein leased at any time during the period of
this lease, viz: from January 1, 1908, to January 1, 1910,
the price to be ascertained therefor as follows, to wit: the
party of the second part, his heirs or assigns, shall offer a
price deemed reasonable by him and if said price shall not
be accepted by the parties of the first part or their executors
or administrators then the parties of the first and second
part herein shall each appoint an arbitrator, both to be resi-
dents of Olympia, Washington, who shall appraise said lands
exclusive of the improvements thereon, and the sum agreed
upon shall be the purchase price of said above described real
estate.   If said arbitrators fail to agree they shall appoint
a third arbitrator.   Said three arbitrators shall then ap-
praise said lands, excluding improvements, and determine the
then value thereof, and the sum any two of said arbitrators
shall agree upon shall be the purchase price to be paid by
said party of the second part, his heirs or assigns, to said
parties of the first part, their executors or administrators."

On December 24, 1907, Edward Harkness died in Cali-

fornia, leaving a will by which he devised to Nellie Harkness a life estate in his half of block 52, and the title to two sons, Warren E. and Harold J. Harkness, minors, who appear here by a guardian *ad litem*. This will was probated at the home of the deceased, and the widow, Nellie Harkness, was appointed administratrix January 21, 1908. As appears from the records, all the debts have been paid and the property distributed, and Nellie Harkness discharged as administratrix by the California court. On October 8, 1908, Walter Crosby was appointed administrator of this estate with the will annexed, by the superior court of Thurston county. On October 17, 1908, Richardson filed his petition, demanding a specific performance of the option to purchase contained in the lease as above quoted. On November 14, 1908, the petition came on for hearing before Judge Yakey, who took the proofs as to the execution of the lease and as to the notice given to the parties interested, found that due notice had been given and served upon the administrator, heard evidence generally on the circumstances surrounding the case, found that Richardson had made a tender under the provisions of the contract to Walter Crosby, administrator of the estate of Harkness, deceased, of the sum of $2,000, being the price determined upon under the contract as a reasonable and fair price for the said real estate, and found that he had kept his tender good. It was therefore ordered and decreed that the time within which the arbitrators should act should be deemed as running from the date of said order, viz., the 14th day of November, 1908, and they were ordered to proceed under the provisions of said contract and carry out said provisions. The administrator was directed to proceed and carry out the provisions of the contract by conveying said real estate for the consideration to be determined by the arbitrators and in accordance with said contract. The two arbitrators appointed were unable to agree upon the valuation of the property. They were also unable to agree upon a third arbitrator. After the arbitrators had failed to act,

Richardson filed his petition, praying that the court compel the administrator to execute a deed for said block 52 in consideration of $2,000. A guardian *ad litem* was appointed for the minor children, demurrers, raising the sufficiency of the facts stated in the petition, were filed and overruled, separate answers were filed to Richardson's petition for specific performance, setting up various defenses, and upon trial of the case, the judge fixed the price of the block at $5,000. Both litigants appealed, Harkness *et al.*, generally, and Richardson from the order fixing the price; and the case is now here for determination.

The plaintiff moves to dismiss the appeal of Harkness *et al.*, for the reasons alleged, (1) because said appeal was not taken or perfected in the manner required by statute; (2) because no bond was given as required by statute or at all, because the bond given does not comply with the requirements of the statute with reference to bonds on appeal, and that said bond is totally deficient, and (3) because it appears upon the face of the record that this court has no jurisdiction of said appeal. As there is no intimation in the brief— the case having been submitted upon briefs—or showing of facts or statement of record cited on which this motion is based, we are not inclined to enter into its discussion.

The principal contention of the defendants is that the contract set forth in the petition was not such a contract as would warrant a specific performance. Outside of the fact that all questions concerning the construction of the statute in this regard must have been decided by Judge Yakey in his order made on the 14th day of November, 1908, and unappealed from, it is evident that the petition in this case sets forth facts sufficient to warrant the enforcement of specific performance, if such facts are true. Section 1610, Rem. & Bal. Code, provides that:

"If any person, who is bound by contract, in writing, to convey any real property, shall die before making the conveyance, the superior court of the county in which such real

estate or any portion thereof is situate may make a decree authorizing and directing his executor or administrator to convey such real property to the person entitled thereto."

The succeeding section provides the manner in which the rights of the parties shall be determined, and in which they shall be enforced. This contract especially provides for the conveyance of this land at the option of Richardson, and if there is any merit in the contention that the contract is not enforceable in specific performance, it must be upon the theory alleged by defendants that there was no consideration for that portion of the contract providing for the conveyance of the real estate. But there was or might have been a consideration. It might reasonably have been that the consideration was expressed in the contract of lease, and that the lessor would not have entered into the contract or have paid the amount of money which he agreed to pay, and did pay under the lease, had he not been granted the option provided for in the contract. Richardson entered into possession under this contract, because it does not militate against this theory that he happened to be in possession under an old contract at the time this contract was made. He remained in possession under the contract, expended money in improvements under the contract, and equity would enforce his right to the specific performance provided for in the contract.

It is also urged that, inasmuch as the contract provided for the determination of the value of the land by arbitrators, he had no right to file his application asking the court to determine by its decree the value of the land, but that it should be determined in the way, and only in the way, provided by the contract. But it is shown conclusively that the arbitrators provided for in the contract were not able either to arbitrate as to the value of the land, or to agree upon the third arbitrator. So that Richardson was helpless in that respect, and of course, under such circumstances, the courts were open to him for the purpose of determining his rights under the contract. We think there was no error made by the court in

overruling the demurrers, or any of the objections interposed.

The question was then determined upon its merits as to the value of the land, the court finding that the value of block 52 was $5,000, and as we have before said, both parties have appealed from this finding. Many witnesses were introduced upon each side who testified upon the question of the valuation of this land, and their testimony varied widely. We shall not attempt to enter into an analysis of the testimony of the different witnesses. But from an examination of such testimony, and also from the fact that the premises were viewed by the court who tried the case and rendered the judgment, we are not inclined to disturb the finding as to value.

The judgment in all things will be affirmed, each party to pay the costs of his appeal.

RUDKIN, C. J., PARKER, CROW, and MOUNT, JJ., concur.