[No. 13428. Department Two. July 28, 1916.]

DICKIE MANUFACTURING COMPANY, *Appellant*, v. SOUND CONSTRUCTION & ENGINEERING COMPANY, *Respondent*.[1]

ARBITRATION AND AWARD—CANCELLATION OF JUDGMENT—ACTIONS. An action to cancel a judgment upon an arbitration and award cannot be maintained upon allegations of unfairness, prejudice and manipulation or other grounds that could have been reached by statutory exceptions on the trial before the arbitrators, under Rem. & Bal. Code, § 420 *et seq.*, where exceptions were wholly omitted and no relief sought under the statute.

SAME. Under Rem. & Bal. Code, § 420 *et seq.*, common law arbitration no longer exists, the statute not recognizing the right to revoke the award, or to bring suit to cancel it or proceedings to ignore it, but on the contrary providing for internal review by exceptions.

SAME—SETTING ASIDE—ACTION. Failure to use "expedition" in an arbitration trial, as agreed upon, is not ground for an action to set aside judgment on the award; since the objection could be raised by exceptions in the arbitration proceedings.

[1]Reported in 159 Pac. 129.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 2, 1915, dismissing an action to cancel a judgment upon an arbitration and award upon sustaining a demurrer to the complaint. Affirmed.

*Kerr & McCord,* for appellant.

*Weter & Roberts,* for respondent.

BAUSMAN, J.—This is an appeal from an order sustaining a demurrer to a petition which sought to declare void a judgment upon an award of arbitration.

In Rem. & Bal. Code, § 420 *et seq.,* we have a comprehensive statute. An agreement to arbitrate must be in writing; each party must appoint one arbitrator; these two must appoint a third, and all must subscribe an oath to make a just award. The board has the right to compel attendance of witnesses, to hear evidence, to adjourn as and for what period it pleases, to decide both law and fact, and to punish for contempt. It is, in short, a temporary court of justice. An award signed by a majority is to be lodged in the superior court. That award, twenty days after copy of it has been served on the losing party, can be converted into an ordinary judgment by order of court. Errors of the board may be corrected by the court on exceptions between this service of the award and entry of the decree, and these exceptions may set up misbehavior of the arbitrators, error in fact or law, or corrupt and undue procurement of the decision. The superior court may set aside the award or recommit the hearing, but when the court does put the award into judgment it stands "as any other judgment" of that tribunal.

Controversies having sprung up between the parties now plaintiff and defendant, they signed an arbitration agreement, each appointed an arbitrator, and these two appointed a third. Plaintiff's arbitrator having after a month of hearings resigned, the others requested plaintiff to appoint a

successor, but plaintiff, announcing itself no longer bound, filed a suit on its claims. Thereupon the remaining members proceeded unattended by plaintiff or its witnesses, and after much more deliberation filed an award allowing defendant a recovery for overpayments.

This award, more than twenty days after service of a copy upon plaintiff, was put in judgment. Plaintiff filed no exceptions but some months later brought the present or second suit to set aside the award, with allegations that the two arbitrators other than plaintiff's had been so prejudiced as to resolve everything blindly against plaintiff, that excessive meetings had been wasted in frivolous deliberations, and that plaintiff's arbitrator, after vainly insisting upon expedition, had abandoned the board in spite of plaintiff's request that he remain. When he left the board only ten per cent of the whole subject, it was alleged, had been traversed in five weeks, so that plaintiff under all these circumstances had revoked his consent to the proceedings and had brought the other suit. As for the judgment on the award, that was before plaintiff's first suit had reached judgment, which it has not arrived at yet, but was after it had been begun. Finally it had been agreed orally that the arbitration should be at common law and not under the statute, for which reason the taking of judgment on it was unfair. There was then a prayer for cancellation of the judgment and award so that plaintiff might pursue the suit on its demands.

Everything plaintiff now complains of could have been reached by statutory exceptions. These were wholly omitted. Accordingly the suit before us can be maintained only on the theory that there was no statutory arbitration to begin with or that it had finally become void. On both points we must hold decidedly against plaintiff. In the face of so complete an act as ours we are clear, and find this proper occasion to say, that common law arbitration does not exist in this state and that the plain purpose of our legislation was to clear much unsettled practice by codifying arbitration. The agree-

ment, quite ample to engage this statute, says not a word excluding it or referring to a different kind. It is of little moment if anything was said by the parties after they had signed the arbitration agreement. Their minds had already met upon the statute.

Much confusion has been brought into our arbitration practice by common law doctrines and decisions under statutes of other states, nor have the opinions of this court been entirely harmonious. The present seems a suitable occasion to review them.

That common law arbitration was excluded by our statute is plain. For instance, either party under the former could repudiate the proceedings before an award was actually returned, and even afterwards, should he refuse to pay it, there was nothing left the prevailing party but to bring a suit upon it. Both these burdensome rights are in express terms swept away, for the statute makes the arbitration a preliminary part of judicial hearing, the award in a sense automatically passing into judgment unless the losing party can persuade the court to modify or set it aside. Most distinctly too does the change appear from the common law where this statute gives the board a right to compel the attendance of witnesses or to punish for contempt. Nor is there even recognized or suggested the right of revoking the award at any stage, of independent suit to cancel it, or of proceedings that ignore it. On the contrary, the act directly provides, as we have seen, for excellent internal review. There is indeed a provision that the agreement may impose a bond that the party will abide by the award, but this is not made indispensable nor does it in any event override positive provisions giving the court jurisdiction to adopt, modify and enforce the award. The bond is to secure payment to the winner as well as additional attorney's fees or damages from delay.

Without reviewing all our previous cases, we may discuss the most noticeable. *Tacoma R. & Motor Co. v. Cummings,*

5 Wash. 206, 31 Pac. 747, 33 Pac. 507, referred to the fact
that our statute was peculiar and that "we can get but little
aid from the citation of authorities." What was involved
there was this: The lower court having upon exceptions set
aside an award and an appeal having been taken from that
ruling, the respondents moved here to dismiss the appeal on
the ground that the order was not a final one, all of which
involved the question whether under the statute the court,
after setting the award aside, could do anything more with
the case. The lower court we held had full jurisdiction to
determine the controversy. If the arbitrators refused to ac-
cept the recommittance of it or to comply with the court's
directions, the arbitration then in a sense had failed, and we
held that the statute directly authorized the court then to
take up a case itself. Equally did we uphold this power if
upon hearing the exceptions he did not recommit the case
but chose to take it over then, for we said:

"But if either of the other grounds of exception are sus-
tained, the arbitration has as fully failed without any such
referring back to the arbitrators as it has under the con-
tingency mentioned in said section after the matter has been
so referred back, and the arbitrators have refused to com-
ply with the direction of the court. . . . In the light of
said § 429 [Rem. & Bal. Code, § 425] it seems clear to us
that we must interpret the provisions of § 426 [Rem. & Bal.
Code, § 422] as having been intended to clothe the court with
full jurisdiction of the controversy to proceed to a final de-
termination whenever the arbitration had failed, and that the
only object in enacting said § 429 was to give the parties to
the arbitration the benefit of a full determination by the arbi-
trators if they were qualified and willing to act, even al-
though they had made a mistake in their first award."

Rem. & Bal. Code, § 422, provides that, if no exception
be filed,

"judgment shall be entered as upon the verdict of a jury,
and execution may issue thereon, and the same proceedings
may be had upon said award, with like effect as though said
award were a verdict in a civil action."

Rem. & Bal. Code, § 425, provides that if upon exceptions the court shall find error in fact or law, it may refer the case back to the arbitrators directing immediate amendment, returnable to the court, "and on the failure so to correct said proceedings the court shall be possessed of the case and proceed to its determination."

In a dissenting opinion it was suggested that the court's thus taking full possession of the case might result in the imposition of a jury not bargained for by arbitration. This apprehension is ill founded. Since it is very clear that the parties have by the arbitration waived a jury, the court in taking over the case should proceed without one. That the court gets full jurisdiction of this case by the arbitration we concluded, saying:

"Every arbitration is entered into in view of the law upon the subject, and every party to such arbitration consents to such jurisdiction on the part of the court in regard to the controversy as has been by law provided. And the law having provided that the filing of such award with the written agreement to submit the same to arbitration should give the court jurisdiction of the persons of the parties to the arbitration and of the subject-matter of the controversy, every one entering into such an arbitration must be held to have consented thereto."

This first view of our statute is undoubtedly the sound one. Those who enter into arbitration accept in advance the jurisdiction of the superior court. The board is a preliminary, voluntarily created tribunal or referee, and the jurisdiction of the superior court is first to be exerted in a revisory capacity and only when appealed to by exceptions. If it cannot adequately correct errors on the exceptions, it may take the whole controversy over and proceed without a jury. Common law arbitration has ceased to exist. If there is no proper agreement under the statute, then there is no arbitration at all. But once the parties do properly agree on arbitration, there can be no revocation. As to the form of the

agreement, as to what constitutes a submission under the statute or as to what departures from it in the agreement will be jurisdictional defects, it is not now necessary to decide.

The next case to be noted is *Glover v. Rochester-German Ins. Co.*, 11 Wash. 143, 39 Pac. 380, which held that independent suit would lie to set aside a filed award and to enforce demands in disregard of it upon allegations of unfairness, prejudice and manipulation by members of the board. That decision we feel we must overrule.  Out of harmony with our act, it would encourage those who see themselves losing to hurry revocation on some charge or other or to induce their member to withdraw, so that if they should not make good the charge, they would at least harass, incumber and keep long in doubt the proceedings of the arbitrators. The statute affords ample protection by exceptions to the award.

*School District No. 5 v. Sage*, 13 Wash. 352, 43 Pac. 341, seems to return to the more vigorous doctrine of the *Cummings* case.  The award of the arbitrators was held binding on question of fact, when the lower court had affirmed the award over exceptions and would not review the evidence before the arbitrators.

*McDonald v. Lewis*, 18 Wash. 300, 51 Pac. 387, is a case which, without citing it, follows the idea of the *Glover* case. The court sustained an independent action to set aside an award and enforce the original demands because the award "was unfair and unjust to the plaintiffs, and was based upon an imperfect and insufficient understanding by the arbitrators of the matters in controversy, and that they did not undertake to inform themselves thereof, but, on the contrary, refused the plaintiffs a hearing."  We now feel that the errors complained of should have been reviewed only under exceptions to the award.  Any other doctrine must fritter the time of the prevailing party and make arbitration oppressive.

*Skagit County v. Trowbridge,* 25 Wash. 140, 64 Pac. 901, develops the statute very little, but it was held that the award even of one agreed arbitrator was binding where that was stipulated for and no corruption was shown upon exceptions.

In *Zindorf Construction Co. v. Western American Co.,* 27 Wash. 31, 67 Pac. 374, the court began to return to the earlier and more correct view of this statute. Revocation, indeed, was not involved for the parties had not proceeded to an arbitration. What we did decide was that, where in a building contract there was a provision for arbitration, no suit would lie upon the original demand while that was ignored.

*Jordan v. Lobe,* 34 Wash. 42, 74 Pac. 817, had the peculiarity of a time limit in the arbitration agreement. The award was to be rendered in twenty days. This we held competent under a section which provides that the arbitrators' oath shall be to make a just award "agreeably to the terms of the submission," so, when this period had elapsed, there was no award for the court to consider.

In *Richardson v. Harkness,* 59 Wash. 474, 110 Pac. 9, we held the court to be open to a direct suit only because the primary nominees were unable to agree upon any third arbitrator.

Passing some intervening cases of little moment, we come to *McElroy v. Hooper,* 70 Wash. 347, 126 Pac. 925. Against a filed award there was a *motion to vacate* on the double ground that the arbitrators had left some stipulated questions undecided and that the agreement to arbitrate had itself not been executed by all the parties. These it was held were errors of law, which not having been excepted to, the award must stand.

In *McCann v. Alaska Lumber Co.,* 71 Wash. 331, 128 Pac. 663, 43 L. R. A. (N. S.) 711, the lower court, having set aside the first award on exceptions, rendered judgment on an amended one. The power to revoke the award or disturb it after that was denied.

*Herring-Hall-Marvin Safe Co. v. Purcell Safe Co.*, 81 Wash. 592, 142 Pac. 1153 (on rehearing 86 Wash. 694, 150 Pac. 1162), emphatically reaffirmed the doctrine of the *Zindorf* case by denying the right of suit while an agreement to arbitrate was ignored.

From the *Zindorf*, from many intermediate cases not cited, and from the *Herring Safe* case, it is perfectly clear that, even though a formal agreement for arbitration has not been signed and is only referred to in some general contract regarding differences yet to arise, we will not permit suit by a complaining party who does not invoke the arbitration. For the same good reason we can tolerate no right in him to call the arbitration void after it is begun and thus ignore ample provisions for direct review. All relief must be had in the court in which the award is to be lodged.

It remains to consider whether in the present case any new reason appears for independent suits and the ignoring or revocation of arbitration. The only thing worth discussing is a clause in the agreement that the arbitrators were to use expedition. No time limit, however, had been prescribed as in the *Jordan* case. What constituted expedition must accordingly be matter of opinion and if reviewable at all for excess is easily reviewed by the superior court on exceptions without ground for ignoring the arbitration entirely. Nor is it everything, we may add, that can be regulated by these agreements beforehand. The contract of arbitration is merged in the tribunal which it creates. Parties may not set up this little court and yet have its way of conducting itself nicely regulated in advance. Unless they expressly fix a time limit, they can no more say how rapidly it shall proceed than they can control the number of questions that shall be asked. Its procedure they can control only in the degree that they can by stipulation empower themselves to question that of the superior court. Indeed, nothing better illustrates the danger of such a contention than this very case, for while

plaintiff's arbitrator says he left the hearings out of disgust with postponements, a whole month's delay appears to have been occasioned by his own.

Again, why claim flat revocation because of gross delays by a board which had to discuss grievances under four contracts for work in three states? If these delays amounted to denial of justice, they were easily redressed under the exceptions; if they were less, then they are only delays encountered in courts as well. Perhaps it will be suggested that arbitrators might refuse to file any award at all. In that event they can undoubtedly be reached by mandamus to utter decision one way or the other, for having taken the oath, they hold an office exposed to mandate. Nothing, in short, is plainer than if we allow revocation for one thing we must allow it for another. If bias before or dishonesty during the hearing is a ground for absolute revocation, the right to set up these in good faith involves the right to set them up in secret bad faith which would keep the whole proceeding in doubt by conflicting writs and disputed jurisdiction.

Order affirmed.

MORRIS, C. J., PARKER, HOLCOMB, and ELLIS, JJ., concur.