[No. 9529. Department Two. September 7, 1911.]

HERRICK IMPROVEMENT COMPANY, *Respondent*, v.
M. J. KELLY, *Appellant*.

HERRICK IMPROVEMENT COMPANY, *Respondent*, v.
BELLA A. KELLY, *Appellant*.[1]

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—NOTICE. An agreement by persons holding an option on lands to install a water system is not binding upon the owners of the land, as an agreement by agents, where the purchaser, before closing the deal, had notice that it was not authorized and would not be performed by the owners.

VENDOR AND PURCHASER—OPTION—ASSIGNMENT OF EQUITIES—EFFECT. Where persons holding an option on land were compelled to default and assigned their equities to the owner, after making a contract of sale of certain lots with their personal agreement to install a water system, the acceptance of the assignment does not bind the owner to install the water system, the owner having refused to agree thereto when the sale was made by the holders of the option.

VENDOR AND PURCHASER — CONTRACT — BREACH — DAMAGES—EVIDENCE—SUFFICIENCY. Damages to the purchaser of lots by reason of failure to install a water system within ninety days is not shown by evidence of values with and without water during the period before installation, where there was no evidence that the property could have been sold at an advance prior to the time when the water was installed.

SAME—PERFORMANCE OF CONTRACT—CONVEYANCE BY SUCCESSOR. A contract by a vendor, "its successors or assigns" to convey land by a good and sufficient deed of "special" warranty, is sufficiently performed by a conveyance from one to whom the land had been conveyed.

SAME—CONTRACTS—FORFEITURE—PAYMENT OF PRICE—EXCUSE FOR DELAY—TITLE—RELIEF IN EQUITY. A court of equity will grant to the vendees, whose contract was forfeited by reason of default in a payment, "a period of grace," within which to make the payment, where it appears that the holder of the title when the sale was made was a trustee under an unrecorded and undisclosed trust, various transfers of interests and equities had been made without disclosing the real *cestui que trust*, and the vendees entertained a real fear that they could not safely rely on a certain deed of the trustee as terminating the trust.

[1]Reported in 117 Pac. 705.

Appeal from a judgment of the superior court for King county, John S. Jurey, Esq., judge *pro tempore,* entered October 20, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in consolidated actions to cancel contracts and to quiet title.   Modified.

*Carkeek & McDonald,* for appellants.

*William C. Keith,* for respondent.

ELLIS, J.—Actions by respondent against appellants to cancel two real estate contracts, forfeit payments made thereunder, amounting to about $1,300, and to quiet title.   The two actions were tried together by stipulation.   From a judgment and decree for respondent, this appeal was taken.

The facts are complicated and require an extended statement.   Prior to June, 1906, the Herrick Investment Company, a California corporation, owned one hundred and twenty acres of land in West Seattle.   In June, 1906, that company conveyed this land to the Washington Trust Company of Seattle as trustee, to secure the payment of a subsidy to the Seattle Electric Company for the establishment of a street car line through the land.   On January 10, 1907, the subsidy having been paid, the Washington Trust Company deeded the land back to the Herrick Investment Company. Shortly prior to that time Lester Herrick and Anson Herrick purchased the one hundred and twenty acres from Herrick Investment Company, and on January 7, 1907, organized the Herrick Improvement Company, under the laws of the state of Washington.   The Herrick Investment Company, on January 18, 1907, deeded the property by absolute deed to the Washington Trust Company, but in reality in trust for the Herricks, who received an order from the Herrick Investment Company on the Washington Trust Company, to hold title to their order; and under an order from the Herricks, the Washington Trust Company made a contract with the

Herrick Improvement Company containing a declaration that the property, which had in the meantime been platted as Sea View Park, West Seattle, was held for the sole use and benefit of the Herrick Improvement Company, the stock of that company on its organization having been issued to the Herricks in payment for the land. This contract and declaration of trust was dated January 10, 1907, but was never recorded. It was evidently made in contemplation of the option next herein mentioned.

On January 9, 1907, the Herrick Improvement Company executed an option on eight blocks in Sea View Park, West Seattle, to Edwin F. James & Company, a Washington corporation, and one W. R. Kelley, which option, by its terms, ran to December 31, 1907. It placed different purchase values on the separate lots as scheduled therein, and the grantees agreed to make certain improvements, which were specified, such as clearing, sidewalking, and grading streets, but did not contemplate nor authorize the installing of a water plant. This option recited that the Washington Trust Company held title in trust for the Herrick Improvement Company, which company agreed to cause the trust company to issue contracts for sale, and upon payment to the trust company of the schedule prices thereof, to make deeds of lots to persons produced as purchasers by James & Company and W. R. Kelley. This option was never recorded. The contract and declaration of trust between Herrick Improvement Company and Washington Trust Company of January 10, 1907, authorized the trust company to replat the property as Fairmount addition, and to make to Edwin F. James & Company, or its order, deeds of lots, upon the payment of specified prices corresponding to those set out in the option. The property was re-platted by the Washington Trust Company as Fairmount addition. A form of contract was agreed upon between James & Company, the improvement company, and the trust company, for sale of the lots by James & Company, leaving blank only the descriptions of the property

and the amounts of purchase, and on sale of lots by James
& Company the trust company was to execute the contracts
and receive the purchase price as the installments were paid.
Meanwhile the absolute title of record remained in the Wash-
ington Trust Company, without record evidence of the trust.

Early in June, 1907, Edwin F. James & Company and
W. R. Kelley negotiated for the sale to the appellant M. J.
Kelly of lot 15, and to Bella A. Kelly of lot 16, both in block
1, of Fairmount addition, representing to them that they in-
tended to install a water system in Fairmount addition. The
appellants paid $20 earnest money, and received from James
& Company a receipt therefor. James & Company and
W. R. Kelley, under the name of Fairmount Improvement
Company, executed to the appellants a written statement to
the effect that they would install the water system within
ninety days. Shortly afterwards the appellants requested
that the contracts of sale be issued, and on seeing the pro-
posed contracts, demanded that the water agreement be in-
corporated therein. W. R. Kelley, who seems to have con-
ducted the business for James & Company and himself, testi-
fies that he then explained to John E. Kelly, father of the ap-
pellants, who conducted the business for them, that the Wash-
ington Trust Company would not include the water agree-
ment in the contract nor vary the terms of the contract as
prepared, because Edwin F. James & Company or the Fair-
mount Improvement Company was liable for the improve-
ments, especially the water system, on its own account; that
John E. Kelly made some objection, but after he had secured
the written agreement signed by James as secretary of the
Fairmount Improvement Company, he, with W. R. Kelley,
went to the Washington Trust Company and delivered his
check for the amount necessary to take up the contracts.
W. R. Kelley says, that appellants then knew that the Wash-
ington Trust Company would not issue a contract with the
water agreement embodied in it; that prior to the time when
the contracts were delivered to John E. Kelly, the matter was

submitted to John Schram, trust officer of the Washington Trust Company, who "stated positively that he had no authority to go outside of the instructions of the Herrick Improvement Company as to the contents of the contract;" that this was prior to the closing of the deal. John E. Kelly testified that it was his memory that the contracts and water agreement were given to him at the same time, in the bank when he took up the contracts, either by Schram or W. R. Kelley. Both these men deny the statement. John E. Kelly testified that he knew the Washington Trust Company was selling the lots and receiving the money. On receiving this initial payment, the trust company executed the contracts without any reference to the water agreement made by James & Company or Fairmount Improvement Company. The contracts were executed June 18, 1907. Each contained the following provision:

"Time is the essence of this contract, and in case of failure of the second party to make payments at the times and in the manner herein specified, all payments made hereunder shall be forfeited to the first party as and for liquidated damages, and this agreement shall forthwith be null and void at the option of the first party, and the first party shall have the right to re-enter and take possession of the said land and premises and every part thereof."

When the next payment became due on December 14, 1907, the water system not having been installed, the appellants sent a check for the amount to the trust company with a copy of the water agreement, and notified the trust company that the payment was made with a reservation of rights thereunder. The trust company refused to accept the money unless unconditionally paid, and returned the check. The Herrick Improvement Company then executed a bond, indemnifying the trust company from damages by reason of receiving the money, and on December 20 the money was again tendered, and the trust company accepted it, and indorsed on the appellants' copies of the contract the following: "Subject only to the terms and conditions of the within contract

paymt. of $262.50 on purchase price and $27.56 on interest is received Dec. 23-07." In the meantime, Edwin F. James & Company, in violation of its option agreement with Herrick Improvement Company, permitted liens for labor and material to be filed against Fairmount addition, aggregating over $2,500, and secured a loan from Herrick Improvement Company to discharge the liens, giving a promissory note for the money and assigning as collateral its equity in certain Fairmount contracts which had been issued by Washington Trust Company, among them the appellants' contracts.

The evidence shows that the first knowledge that the Herrick Improvement Company had of the water agreement was on December 14, 1907, and it then refused to recognize it. On January 10, 1908, Edwin F. James & Company, being unable to pay the note to Herrick Improvement Company, made an absolute assignment of the contracts held by that company as collateral, in liquidation of the debt, and the note was returned to James & Company. Both James & Company and Herrick Improvement Company at once notified the Washington Trust Company that the improvement company had become the sole owner of the contracts. The Herrick Improvement Company also notified the appellants of that fact by letter dated January 2, 1908. On March 17, 1908, the appellants made their next payment, with a statement that they reserved their rights as in former letters which were referred to. This payment was accepted by the Washington Trust Company.

In April, 1908, the Herrick Improvement Company began the installation of a water system in Fairmount addition, and W. R. Kelley, who had then passed into the employment of Herrick Improvement Company as sales agent, notified John E. Kelly, the father of appellants, and also the attorneys for appellants of that fact, and stated that the appellants would have the benefit of the water system. On April 11, 1908, the Herrick Improvement Company confirmed this in-

formation by a letter to the appellants' attorneys, also stating that, if the water plant was eventually taken over by the city, the improvement company would endeavor to have it done without any assessment against the property owners, but could not definitely promise this. The system was completed about the middle of May, 1908, and extends to every lot in the addition. It is of a permanent nature and in accordance with specifications made by the city engineer's office, so that it may be taken over and incorporated in the city's water system when the city has extended its system to that district.

Before the next payment became due, the appellant M. J. Kelly brought suit against the Herrick Investment Company of California, claiming damages of $250 because of the failure to install the water system. The suit was pending when the next installment fell due on June 14, 1908. The appellants defaulted in that payment. They were notified of the default by W. R. Kelley, for the Herrick Improvement Company. The default continued, and on August 21 the Washington Trust Company deeded the lots in question to Herrick Improvement Company. Lester Herrick then tendered warranty deeds of Herrick Improvement Company of the lots to appellants and demanded payment. The tendered deeds were not accepted, and payment was refused. It appears from the testimony of Fred W. Kelly, brother of the appellants who was present and advising them, and from that of their attorney, that the refusal was mainly because the claim of $250 damage for each lot, on account of failure to have the water system installed in ninety days as specified in the James & Company agreement, was not allowed. Mr. Carkeek, the attorney, testified as follows:

"Well, their attitude was, if he would care to settle their damages, that they would pay up, if I recollect. Q. Well, what damages? A. Well, they felt that they had been damaged by the failure to put in the water system in ninety days, and they estimated their damages at about $250 a lot, and I think we endeavored to try and agree if we could not make a

small—I would not say small, make some reduction of the purchase price. Mr. Herrick was there to get the installment in full, as I recollect, and he did not want to make any allowance."

It also appears that the deed was objected to on the ground that the title offered by Herrick Improvement Company was not good, appellants having learned that the Washington Trust Company had held the title in trust only, and appellants did not know for whom. On August 22, 1908, the Herrick Improvement Company, by letter to the appellants, declared the contracts forfeited, and then brought this action to cancel the contracts, establish forfeiture, and quiet title.

The appellants first contend that Edwin F. James & Company and W. R. Kelley were agents for Herrick Improvement Company in negotiating the sale, and hence the water agreement signed by them as Fairmount Improvement Company was binding upon the respondent, whether incorporated in the contracts or not. This position is not tenable. The evidence, though conflicting, fairly shows that the appellants were fully advised when they made the initial payment and took up the contracts, that James & Company could not give any contract binding the property, but that this could only be done by Washington Trust Company, which company they knew held the title; that the trust company refused to incorporate the water agreement in the contracts, and that it was explained to them in effect that this was a side agreement for the performance of which they would have to look to James & Company alone. Even assuming that the evidence established an agency, the lack of authority of the agent to make this agreement for the principal was then made known to the appellants. They took the contracts knowing that the principal positively refused to incorporate therein the water agreement. They must be held to have taken the agreement as the personal obligation of James & Company. The authorities cited are not applicable to the evidence here. In *Windsor v. St. Paul, Minn. & M. R. Co.*, 37 Wash. 156, 79 Pac.

613, the contract was made with the agent of the railroad company, and a collateral agreement to build fences and guards was made by him at the same time, solely as representing the company. The whole question of agency, authority, and contract was passed upon by the jury, and the court refused to disturb the verdict. Other authorities cited are to the effect that one who avails himself of the advantages of a contract made by his agent must assume its burdens. This is elementary, but does not apply to a case where it was known when the contract was taken that the principal refused to bind himself to assume the burden in question. The evidence here falls far short of a ratification. Throughout the whole history of the matter, both the Washington Trust Company and the Herrick Improvement Company refused to recognize anything but the written contracts executed by the trust company.

It is next claimed that if James & Company and W. R. Kelley were not agents, then in taking an assignment of the contracts from them the Herrick Improvement Company took them with full knowledge of equities between the original parties. But what were those equities? While the appellants claim that when they took the contracts they thought James & Company owned the property, the preponderance of the evidence shows that they must have known that either the Washington Trust Company or some one whom that company represented, was the owner, or at any rate had such an interest as enabled it to dictate the terms of the contract which it would make and be bound by. They, with this knowledge, accepted the contracts which it did make, and these are the contracts which were assigned. The fact that, as an inducement to these contracts, James & Company promised something which it could promise only for itself, and which the appellants were told in effect that it was promising for itself, dose not import into the contracts in the hands of Herrick Improvement Company any terms not there in the beginning. Whatever may have been the relation of the contracts and

the agreement as inducement the one to the other, they were independent in fact and knowingly made with different parties.

But, in any event, the respondent, prior to the final default of the appellants, had already installed a water system which the evidence shows was fully adequate to the necessities of the addition and of a more permanent nature than that promised by James & Company. Appellants were permitted to introduce evidence of damage by reason of the water system not being installed within the ninety days. We think the evidence fails to show any damage. The appellants claim to have purchased for building purposes, but it is apparent that they did not intend to build before the time when the water plant was actually installed. Even if they had purchased for speculation, there is no evidence that they could have sold at an advance or at all prior to the time the water plant was actually installed. Evidence of value with water and without water, during the period before the installation, is alone hardly evidence of damage, but it was the only evidence offered.

Counsel contends that the tender of deeds of Herrick Improvement Company was not sufficient, because the contracts provided that the Washington Trust Company would execute good and sufficient deeds. *Gottschalk v. Meisenheimer*, 62 Wash. 299, 113 Pac. 765, 115 Pac. 79, is cited. In that case the contract provided that, upon full payment, the seller would "execute or cause to be executed . . . a good and sufficient warranty deed for said premises." The contracts here provide that "the first party, its successors or assigns, will convey said premises by a good and sufficient deed of special warranty . . ." Even if the words "successors or assigns" did not appear, the reasoning in the *Gottschalk* case would not apply where the contract was for a special warranty deed. 29 Am. & Eng. Ency. Law (2d ed.), 701.

But there is another phase of the title which we think should move a court of equity to grant the appellants a limited time within which to complete the payment, failing which the

forfeiture should be enforced.   The evidence indicates that, early in the transaction, the appellants were advised that the Washington Trust Company held the legal title in trust for others.   This was when James & Company sought, on appellants' request, to have the contracts provide for deeds of general instead of special warranty.   The trust company refused, because it held the title only in trust.   The appellants, of course, knew that the trust was not for James & Company alone, or their request could have been met.   They also knew, at the time of the tender of deeds, that James & Company had held an option upon the property, or at least some interest other than that of an agent.   There was no record evidence either of the trust or of the interest of James & Company. While the title tendered by Herrick Improvement Company was unquestionably good, the appellants, in view of their knowledge of unrecorded instruments, but the contents of which they did not know, doubtless entertained a real fear that they could not safely rely upon the deed from the trust company to the improvement company as terminating the trust, the existence of which they had actual notice but the nature of which was not disclosed.   The evidence is not clear that they or their attorneys had ever been accorded an opportunity to examine the unrecorded documents creating the trust, and it is evident that they believed the Herrick Investment Company of California was the real owner.   In fact, one of them had sued that company as the owner.   They cannot be presumed to have known all of the facts developed at the trial.   We think the equities of the case warrant the granting to appellants "a period of grace."   *Rohlinger v. Coletta Land & Orchard Co.*, 64 Wash. 348, 116 Pac. 1095.

.The cause is remanded with directions to modify the decree so as to permit it to be discharged, by the appellants' paying the balance due under the contracts within thirty days after remittitur, with interest, upon a conveyance to them of full title by general warranty deeds, of the property, from the

Herrick Improvement Company. In case of their failure to pay within such time, the decree is to become absolute.

DUNBAR, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.