[No. 13555.    Department One.    February 2, 1917.]

S. J. CERVIEN *et al.*, *as* Cervien & Miller, *Respondents*, v.
ERICKSON CONSTRUCTION COMPANY, *Appellant*.[1]

RAILROADS—CONSTRUCTION—CONTRACTS—"GRUBBING." "Grubbing"
in a railroad construction contract means taking out the roots,
stumps and obstacles imbedded in the surface of the ground along
the right of way, except where not required on account of cuts and
fills; and where, under the contract, the cuts referred to were to be
of more than three feet, and the fills of more than two feet, the con-
tractor cannot be allowed for work on stations already cleared in
which the cuts and fills exceeded the stipulated requirements; since
there was no grubbing to be done on such stations.

SAME—CONSTRUCTION — CONTRACTS — DECISION OF ARBITRATOR.    A
provision in the contract for grubbing railroad right of way that
the chief engineer of the company shall be the final arbiter of all
disputes under the contract, is conclusive and binding unless the
decision of the arbitrator has been made arbitrarily and capriciously.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered February 18, 1916, upon find-
ings in favor of the plaintiffs, in an action on contract, tried
to the court.    Reversed.

*Corwin S. Shank* and *H. C. Belt*, for appellant.

*Jay C. Allen* (*Eimon L. Wienir*, of counsel), for re-
spondents.

PER CURIAM.—Action to recover upon a subcontract for
grubbing in the construction of the Seattle, Port Angeles &
Lake Crescent Railway Company.    The contract under which
respondents undertook to grub forty stations, in so far as
it is material to our inquiry, is as follows:

"(10).    The first party further agrees that it will, within
ten (10) days after the certificate and estimate shall have
been procured by it, as in this section provided for, pay to

[1]Reported in 162 Pac. 567.

the subcontractor the sum shown by such certificate to be
due, at the following rates and prices, viz:

Earth or common excavation, per cubic yard..$   .28
Clearing, per acre........................
Grubbing per One Hundred (100) feet...... 18.00

. . . When the entire work hereinbefore specified to be
done by the subcontractor has been entirely finished and
completed to the satisfaction and acceptance of the first
party and the chief engineer of said railway company, the
first party shall obtain from said chief engineer a certificate
to that effect, together with a final estimate of the amount
and value of the various kinds of work done by the subcon-
tractor under the terms of this agreement, and it is mutually
agreed by and between the parties hereto that such estimate
shall be final and conclusive, and within thirty days after
said certificate and estimate shall have been furnished by
the chief engineer, the first party will pay to the subcon-
tractor the sum or sums, if any, which may be due him under
this contract agreeable to said estimates, together with the
fifteen per cent above referred to, and any and all other per-
centages by it retained as aforesaid; and such payment shall
be in full settlement for all work done by the subcontractor
under the terms of this agreement.

"(12). . . . When any work, for which no price is
specified herein, shall be done by the subcontractor at the
request of the chief engineer of said railway company, the
subcontractor shall be entitled to a price therefor, to be fixed
and determined by said chief engineer.

"(13). It is further mutually understood and agreed
that in case any dispute or misunderstanding shall arise be-
tween the parties hereto in relation to any of the covenants
or stipulations contained herein, or to their performance by
either of said parties, the chief engineer of the said railway,
company shall be and he is hereby made an umpire to decide
all such questions, and his decision on any question or matter
touching this contract shall be final and conclusive between
the parties hereto, and each of them hereby waives any and
all right of action at law or otherwise, and agrees to be bound
by the decision of said chief engineer. . . .

"(21). It is further mutually understood and agreed that
the subcontractor shall be paid at the stipulated rates only

for work done as required by the plans, profiles, specifications and instructions of the chief engineer."

When the subcontract was completed, a dispute arose as to the number of stations respondents had grubbed. Respondents claimed they were entitled to forty stations, while the district engineer refused to allow more than twelve. As provided for in § 13 of the contract, the controversy was taken to the chief engineer of the railway company, who allowed respondents for eighteen stations. Still dissatisfied, respondents brought this action and obtained a judgment, from which this appeal is taken.

The case presents two questions. First, one of fact. What is grubbing? Second, one of law. Is the decision of the chief engineer conclusive? Grubbing is a word of simple meaning, and no difficulty should be encountered in defining it. Referable to both lexicographers and common usage, it means taking out the roots, stumps and obstacles imbedded in the surface of the ground along the right of way, except where not required on account of cuts or fills; the cut and fill rule used in this case being cuts of more than three feet and fills of more than two feet. The ground covered by this subcontract had already been cleared under another contract, so that where fills were required all it would be necessary for respondents to do under their grubbing contract would be to cut the stumps of trees off sufficiently close to fall within a two-foot fill. In cases of cuts of more than three feet, the stumps, roots, stones and other obstacles would be removed as a part of the excavation work. From a profile map in evidence, as explained by the engineer in charge of the work, it would appear that, if respondents were allowed for grubbing every station where a cut is three feet or less or a fill did not exceed two feet, they would not be entitled to a greater number of stations than allowed by the chief engineer.

The lower court seems to have lost sight of the fact that grubbing would not be required on stations showing cuts

exceeding three feet or fills exceeding two feet, for respondents were allowed to recover for grubbing station 193, having a fill of 7 feet; stations 194 to 196, where there was a cut running from 6 to 20 feet; station 197, having a fill of 7 feet; stations 198 to 200, having a fill of from 2 to 9 feet; station 201, having a cut of 4 feet; station 202, having a fill of 8 feet; station 203, having a fill of between 4 and 5 feet; station 204, having a cut of 7 feet; stations 206 to 208, having a fill running from 5 to 30 feet; stations 210 to 214, having a cut running from 5 to 30 feet; station 216, having a cut of 6 feet; station 217, having a fill of 4 feet; stations 218 to 222, having a cut from 5 to 25 feet; stations 224 to 225, having a cut of 5 feet; and station 230, having a fill of 4 feet. At these stations the roadbed is from 16 to 22 feet wide, built on a hillside with sometimes a cut on one side and a fill on the other, the figures given being taken from the center line. We cannot understand upon what theory grubbing should be required or allowed on stations showing such cuts and fills. If, as one of the respondents testified, they sawed off tops of trees upon stations where fills would be made, they might be entitled to a charge against appellant under § 12 of the contract as work required for which no price was fixed, but cutting off, tree tops could hardly be classified as grubbing. For these reasons, we conclude the judgment cannot be sustained upon the facts.

There is, however, another reason from which there is no escape, and that is, under the contract the chief engineer is made the final arbiter of all disputes of this character. This provision, when found in a contract, has uniformly been recognized as binding and conclusive upon all parties, except where the award of the arbitrator shows it to have been arbitrarily or capriciously made. There is no such finding in this case, nor is there anything disclosed in the record upon which to base such a finding. The lower court simply substituted its judgment for that of the chief engineer. That cannot be done. For this reason alone the judgment must

be reversed.    We have reviewed the facts simply to show that the award of the chief engineer of the railway company was neither arbitrary nor capricious.

The judgment is reversed.