[No. 27911. Department Two. February 18, 1941.]

MARTIN HEGEBERG et al., Appellants, v. NEW ENGLAND FISH COMPANY, Respondent.

MARTIN HEGEBERG et al., Appellants, v. PIONEER CANNERIES, INC., Respondent.

MARTIN HEGEBERG et al., Appellants, v. PIONEER SEA FOODS COMPANY, Respondent.[1]

[1] Reported in 110 P. (2d) 182.

*Kenneth Durham* and *Nelson Durham* (*Green, Boesen & Landye*, of counsel), for appellants.

*Medley & Handley, Bogle, Bogle & Gates*, and *Tanner, Garvin & Ashley*, for respondents.

BEALS, J.—Three actions were instituted before the superior court for King county by several fishermen representing their own claims and as assignees of other fishermen, one action against New England Fish Company, a corporation, one against Pioneer Canneries, Inc., a corporation, and the third against Pioneer Sea Foods Company, a corporation. The actions were consolidated for trial before the superior court and resulted in judgments of dismissal, from which the plaintiffs have appealed. The appeals have been consolidated, identical questions being presented.

It appears that, considered as a fishing ground, Alaska is roughly divided into six fishing districts. Respondents are three of the salmon packers operating in the Copper river and Prince William sound area,

comprising one of the recognized fishing districts. Appellants and their assignees are all members of the Copper River and Prince William Sound Fishermen's Union, composed of about seven hundred fishermen, appellants having been employees of respondents during the fishing season of 1937. Some of the members of the union are known as company fishermen, and some as independents, the principal distinction between the two classes being that the independents supply their own boats and gear, while the company fishermen are furnished such equipment by their employers. Naturally, the independents receive a higher price for their fish.

During the· 1937 fishing season, union employees operated under two agreements, each of the packers for the area above referred to signing with its men identical contracts. These agreements fixed the price per fish to be paid the company fishermen and independents, the prices varying for each of four varieties of salmon known as kings, reds, pinks, and chums.

Some years ago, the salmon packers operating in Alaska formed an informal association known as the "Canned Salmon Industry" (hereinafter referred to as the association), functioning through committees, one of its purposes being collective bargaining with labor.

During the spring of 1938, the association was negotiating with five general unions of cannery employees in an attempt to reach an agreement on wages and prices for fish for the 1938 season. No agreement had been reached, but by April 20th it had been tentatively agreed to submit the matter to a fact-finding board. The union to which appellants belonged and the Copper river packers, who had been negotiating independently, had reached no agreement, the employers insisting upon payment of lower prices for fish than the 1937 scale, while the unions demanded an increase. In the

Copper river district, the fishing season opens May 10th and closes about August 5th, but naturally, preparations for work should be entered upon some time before the opening of the fishing season.

It appearing that the Copper river packers and their employees could not agree, the employers made identical written proposals to the Copper River Fishermen's Union (hereinafter referred to as the union), dated April 20th, and entitled:

"Proposal from the Copper River Packers to the Copper River and Prince William Sound Fishermen's Union covering fish prices, wages and conditions for company fishermen, season 1938, based on the 1937 company fishermen's agreement with the following changes."

At the same time, a similar proposal was made to the union concerning the independents. It was suggested by the employers that reductions ranging from twenty to twenty-five per cent in the prices to be paid for each of the four kinds of salmon above referred to be made the basis of pay for the season of 1938. At the same time, each employer wrote to the union a letter containing the following:

"Referring to the enclosed proposals dated April 20, 1938, outlining wages, conditions and fish prices governing operations for the 1938 season for company and independent fishermen:

"It is understood that wages and prices of fish enumerated in the enclosed proposals covering company fishermen, as well as independent fishermen, are to be the guaranteed minimum prices for the 1938 season and that the question of increased compensation, if any, is to be left to a fact-finding board as covered by an agreement between the Canned Salmon Industry and the various unions with which the Canned Salmon Industry has negotiated. This fact-finding board is to conduct its own investigation and determine whether or not we are justified in the reduction of compensa-

tion offered below the 1937 scale; if not, to what extent this compensation should be increased; the maximum to be 10% above the 1937 season's scale."

The union accepted the employers' proposal, and the fishermen immediately commenced operations and delivered their fish to their respective employers, receiving the guaranteed minimum price.

Meanwhile, negotiations between the association and the five unions continued, culminating in a written agreement dated June 7, 1938, the pertinent portions of this agreement reading as follows:

"The undersigned, Canned Salmon Industry, as the representative of the Alaska Canned Salmon Packers, as set out and signed in Exhibit A, or as otherwise evidenced . . . and the Unions, which shall sign this agreement . . . hereby agree that the members of said Unions will accept employment from the Packers . . . according to the terms herein set forth and that a Fact Finding Board shall be created to settle the following question . . .
"Are the Packers justified in the reduction of compensation offered . . . or should such compensation be increased above such offer and if so, to what extent."

The agreement provided that the fact-finding board should be composed of three members, one selected by the unions and one by the packers. If these two should not agree upon a third, then the Honorable Francis A. Garrecht, judge of the United States circuit court of appeals, ninth circuit, should submit a list of three men, from which the unions should strike one name and the packers should strike one.

Other provisions were: "The findings of the board shall be on a district basis;" "The board's investigations shall be limited to the question submitted herein, and shall be independent, private, and confidential;" "The board and its employees shall have access to the cost and sales records pertaining to the 1937 pack and

any other information pertinent to the question and the investment and liability records of the packers for their canneries operating in Alaska;" "The last rates of compensation submitted by the packers for the 1938 season shall be the guaranteed minimum basis for compensation;" "The findings of fact and the report of the majority of the board shall be binding and conclusive."

This provision (here the bone of contention) appears:

"7-A. The findings of fact and report of both the majority and minority, if any, of the board shall be in writing and shall be filed prior to August 25, 1938, with E. P. Marsh, Federal Conciliator, the Canned Salmon Industry, and each of the unions signing this."

This document was signed on behalf of the association by A. I. Ellsworth, as secretary, and was signed by the representatives of the five unions, but not by the officers of the Copper River Fishermen's Union, that union having already made its contract with the Copper river packers. The union, however, later, through its officers, agreed to abide by the agreement. Attached to the association's contract was a rider reading as follows:

"Exhibit 'A'—To be attached to and made a part of the Agreement for a Fact Finding Board, being a list of all Alaska Canned Salmon Packers agreeing to be bound by the provisions of said Agreement."

Each packer was to signify consent to be bound by the agreement by signing exhibit A.

A copy of the association's agreement with the unions was sent to each of the Alaska packers by Mr. Ellsworth, to be returned to him, signed by the packers. Respondents do not question their liability under the agreement, save upon the points upon which they defended in these actions.

As its representative on the fact-finding board, the association named August Buschman, the unions named Henry P. Melnikow, and DeLancey C. Smith was named as the third member of the board. The board held its first meeting about the middle of July and prepared comprehensive questionnaires, which were mailed to each Alaska salmon packer. These questionnaires were returned to the board early in August, and about August 10th the board reconvened. Mr. Ellsworth, as secretary of the association, attended to the assembling of the necessary data to be considered by the board, and acted on behalf of the association in presenting the employers' case.

Necessarily, the awards for the different districts were made separately. After the awards for one district were agreed upon, the board would proceed to another district. A unanimous agreement was reached August 24th, on which day Mr. Ellsworth was informed concerning the same. The final written award was signed August 26th, or possibly the next day, the result having been announced to the Federal conciliator on August 25th.

As soon as possible, Mr. Ellsworth mailed copies of the award to the various packers concerned therewith. The entire award is voluminous. By it, the wages of more than sixty classes of labor in each of the six fishing districts were fixed. The operations of more than a hundred canneries were considered. The wages, generally, were fixed at amounts lower than the 1937 scale.

Concerning the award for the Copper river district, with which we are here concerned, the prices to be paid for fish were separately found and fixed, the prices for the four kinds of salmon varying from five per cent to twelve or more per cent below the 1937 scale of prices, being, however, above the guaranteed minimum

fixed by the contract above referred to. The unions had asked for a ten per cent increase over the 1937 scale.

Early in September, the Copper river packers filed with the members of the board a petition to modify the award and reopen the hearing as to the prices to be paid the Copper river fishermen for reds, pinks, and chums, no objections being presented to the prices fixed for king salmon. Objections were also waived to the labor scale fixed by the board for the other unions, those employees being paid according to the award.

In due time, these actions were instituted for the purpose of recovering judgment for the difference between the minimum prices fixed in the agreement between appellants and respondents and the amount fixed by the award. Respondents instituted five actions, asking for declaratory judgments declaring the rights of the respective parties to these actions. The declaratory judgment proceedings having been dismissed at the beginning of the trial, the cause is now before us upon a stipulation that the complaints in those actions be considered as respondents' affirmative answers in the three consolidated cases.

The amount due each appellant and each assignor has been agreed upon, if it should be determined that the award of the board is valid and binding.

At the close of the trial, the court dismissed the actions, holding that the award of the fact-finding board was filed too late, the award not having been reduced to writing and signed until two days after the expiration of the time limit fixed in the agreement between the association and the labor unions.

Appellants assign error upon the striking of their exhibit No. 10, the fact-finding award, which the court struck for the reason above stated. Appellants also as-

sign error upon the striking of the testimony of two members of the board to the effect that Mr. Ellsworth, on behalf of the association, agreed that the award might be filed at a date later than that fixed by the agreement. Appellants also assign error upon the entry of certain findings of fact and conclusions of law; upon the entry of judgment of dismissal; upon the refusal of the court to enter judgment in appellants' favor; and upon the denial of appellants' motion for a new trial.

We are convinced that all the parties now before the court agreed to be bound by the conclusions of the fact-finding board. As we view the matter, the question to be determined is whether the conclusion which the board reached is binding upon the parties, or whether, as the trial court held, it is not binding because filed two days after August 24th, the date fixed by the fact-finding agreement as the last date within which the report should be filed.

The board's report is lengthy, stating as to the date it was signed, the following:

"The conclusions and results herein stated were arrived at on August 24, 1938 and orally proclaimed on August 25, 1938 to Mr. Lyman N. Sisley, United States Commissioner of Conciliation, Department of Labor, United States of America, acting as the personal representative of Mr. E. P. Marsh, United States Commissioner of Conciliation, but this decision was not formally reduced to writing until this 26th day of August, 1938, on which day it has been signed."

There was some evidence to the effect that Mr. Ellsworth consented to the delay in filing the report, but he testified that he did not so consent, and the trial court found that Mr. Ellsworth was not authorized by respondents to extend the time limit as fixed in the agreement. The trial court found that the respondents had adopted the award as to other employees,

but that this action on the part of respondents did not amount to waiver or ratification of the report. The court also found that there was not sufficient evidence in the record to support any award to appellants upon the basis of *quantum meruit*, and expressly found, contrary to respondents' contention, that the award was not invalid as having been made on a fundamentally wrong basis.

The fact-finding agreement did not expressly provide that time was of the essence thereof, that matter being covered simply by paragraph 7-A, above quoted.

■ The record shows that the agreement between the parties, whether it provided for the fixing of a labor scale, or prices to be paid for merchandise, or both, was an appraisal or valuation. *Martin v. Vansant,* 99 Wash. 106, 168 Pac. 990, Ann. Cas. 1918D, 1147; *Wagner v. Peshastin Lumber Co.,* 149 Wash. 328, 270 Pac. 1032; *Gord v. Harmon & Co.,* 188 Wash. 134, 61 P. (2d) 1294.

It is the general rule that provisions in contracts for price or value fixing are held to provide for appraisals and not arbitration. This principle was recognized in the case of *Gord v. Harmon & Co., supra.*

■ In any event, it is clear that neither arbitrators nor appraisers should properly be classed as agents. In the case of *Martin v. Vansant, supra,* this court said:

"Arbitrators are, in no proper sense of the term, agents. They are private, extraordinary judges of a domestic tribunal, selected by the parties themselves to decide existing controversies and disputes submitted to them. They are not subject to the direction and control of either party. They are chosen to act in a quasi-judicial capacity. They are not permitted to obey orders given in advance, but must be free from partiality and bias and do equal and exact justice between the parties. To call an arbitrator an agent is an egregious misnomer, and any attempt to apply to arbitra-

tion the rules pertaining to agency is far fetched and impractical."

■ It is, of course, the general rule that persons proceeding under an arbitration, valuation, or appraisal agreement, are limited by the authority conferred upon them by the contract of the parties, and that, to be binding, their report must be within the time limit fixed by the contract. 6 Williston on Contracts, §1929. Under the agreement in the case at bar, the appraisal or valuation to be made by the fact-finding board was a basic inducement for the contract between the parties. If the time limitation provision, including the filing of the report with the Federal conciliator and the parties to the contract, is of the essence of the contract which resulted in the valuation or appraisal, it may well be argued that the party seeking to enforce the appraisal should be required to show a strict compliance with all terms of the agreement, including the time element.

As we view the matter, the determining factor here is whether, under the contract, the time limitation is a basic and substantial part of the preparation and filing of the report, or whether, on the other hand, the time limitation is not of the essence of the contract.

■ The appraisal was made pursuant to the contract between the parties, but the failure of the appraisers to observe the time limitation of the contract was not a direct breach of the *contract*, as the appraisers were not parties thereto. It was a failure on the part of the appraisers to observe a condition of the contract, and the effect of that failure is to be here determined.

■ As stated in 3 Williston on Contracts, § 805, it has been held in many jurisdictions, in actions between the parties to a contract, that, even though an express condition has not been complied with, a party who has substantially performed may recover on the con-

tract, suffering any proper allowance for compensation to the other party for his failure to comply with the condition. The text continues:

"Nowhere would a departure from full performance of a condition be regarded as important if the departure were an inconsiderable trifle having no pecuniary importance."

As has been frequently held, the imposition of an unjust or unreasonable penalty or forfeiture out of all proportion to the consequences of a breach will not be enforced. In the case at bar, the strict enforcement of the time limitation cannot be said to amount to the imposition of a penalty, but it would seem that it would partake of the nature of a forfeiture, taking into consideration the money paid by the parties to the contract for the expenses of the appraisement, and the fact that a season's work was performed by the fishermen, in reliance upon the prospective appraisement. In so far as the case at bar is concerned, the judgment entered by the trial court, to the effect that appellants had no right to recover under the award of the appraisers, rendered entirely useless the time, effort, and money expended in preparing the appraisement.

A sound and well recognized public policy strongly supports arbitration of disputes between employers and employees. Apparently, all parties relied upon the anticipated appraisement in entire good faith. As stated in the case of *Gord v. Harmon & Co., supra,*

"When the employees returned to work, in accordance with the agreement which had been executed, they furnished a consideration which was beneficial to the employers."

Obviously it was to the advantage of both parties that appellants should carry on their fishing operations and respondents operate their canneries. The award or appraisal was made by experts, after an ex-

haustive investigation and study, and the result reached was the unanimous agreement of the appraisers.

Upon no theory can it be contended that, within reasonable limits, the time element, in so far as the filing of the report was concerned, was of the least consequence. The fishermen had practically completed their work, and the packers had received all the fish caught, relying upon the result of the board's labors, which were arduous and required much detailed study. The parties did not contract that time was of the essence of the agreement, and apparently the report was very generally accepted and acted upon by those concerned.

In Restatement of the Law of Contracts, § 302, is found the following:

"A condition may be excused without other reason if its requirement (a) will involve extreme forfeiture or penalty, and (b) its existence or occurrence forms no essential part of the exchange for the promisor's performance.

"Comment: .a. The application of the principle in the Section cannot be made with mathematical exactness. The questions involved are those of degree, and in deciding them some margin of discretion must be allowed to the court. A contract may be framed so that what is in form a condition will, if given effect, involve the consequences of a collateral agreement for a penalty in case of breach. Enforcement of such a collateral agreement is confessedly opposed to public policy and provisions creating a condition that would produce the same result should be no more operative because put in the form of a condition."

Certainly, the slight delay in filing the report may well be described in the words of Professor Williston as "an inconsiderable trifle having no pecuniary importance," *supra,* and the strict enforcement of the time provision of the contract, which, in the words of the above quotation from the Restatement, would in-

volve an extreme forfeiture or penalty, the time element forming no essential part of the exchange of appellants' agreement to work in consideration of respondents' promises to pay, should not be adjudged unless required by law.

██ If the parties to a contract agree that time is of the essence thereof, it might well be contended that the courts could not hold that the parties did not mean what they said, whether the stipulation appears reasonable or not; but in considering a contract which contains no such stipulation, and when it does not appear that the time element was in fact of importance to either party, the contract should be enforced, if the only reason for disregarding it be an inconsiderable lapse of time beyond the contract term, which caused no change in the relationship of the parties, affords no base for any claim of estoppel, was not caused by the fault of either party, and appears to be entirely immaterial in considering the relationship of the parties and the results to be accomplished.

This court has not hesitated to grant relief from express conditions in contracts, where great injustice and undue hardship would result from strict enforcement of the terms of the agreement. *Herrick Imp. Co. v. Kelly,* 65 Wash. 16, 117 Pac. 705; *Edwards v. Heaton,* 101 Wash. 595, 172 Pac. 839; *Wallis v. Elliott,* 154 Wash. 625, 282 Pac. 928. These cases are not strictly in point, as each case on the facts differs greatly from the situation here presented, but the principle laid down would seem applicable to the case at bar.

Other courts have enforced awards made after the expiration of an agreed time limit, where the delay was inconsiderable. *Thompson v. Newman,* 36 Cal. App. 248, 171 Pac. 982; *Patrick v. Batten,* 123 Mich. 203, 81 N. W. 1081; *Bolhius Lumber & Mfg. Co. v.*

*Brower,* 252 Mich. 562, 233 N. W. 415; *Evans v. Hitch-cock,* 26 Ill. 295; *Eifert v. Wolf,* 19 Ky. L. 507, 41 S. W. 6.

In many cases, courts have held awards void because filed after the expiration of the time within which the award should have been made. In most of these cases, however, the delay in filing the award was greater than that in the case at bar, and the effort and expense devoted to the preparation of the award much less. It should also be noted that, in several of the latter group of cases, the award was repudiated by one of the parties to the agreement, prior to the date of its filing.

Respondents rely upon the case of *Jordan v. Lobe,* 34 Wash. 42, 74 Pac. 817, in which a judgment of the superior court, quashing an award made by arbitrators, was affirmed. It appeared that, during the month of January, 1902, the parties to the action entered into a contract of arbitration, naming two arbitrators, who were to agree upon a third. The contract provided that, immediately upon the signing of the contract, the two named arbitrators should proceed to agree upon a third, and that, when the third member of the board should be agreed upon, the board should "immediately proceed to the determination of the questions heretofore submitted to them," and that the board should "render its decision in writing within twenty days after said third arbitrator shall have been selected."

May 23, 1902, the two arbitrators named in the agreement selected their associate, and the three immediately proceeded to hear evidence introduced by the respective parties. The opinion recites that, when the evidence was closed, the arbitrator last chosen stated that it was necessary for him to go to Alaska, and that it would be impossible for him to consider the award until after his return, which was agreed to by all parties. This arbitrator returned to the state of Washington, June 11, 1902, but nothing further was done until

about July 7, 1902, when this arbitrator called upon one of the parties for certain books of account. July 10th, the plaintiff in the action, one of the parties to the contract, served upon the other parties "a notice of revocation of the arbitration," and July 15th the arbitrators, two of them signing, filed their report and award in favor of the defendants in the action. Subsequently, the plaintiff instituted the suit in question, moving to quash the award because not made within the time limited by the agreement, which relief the superior court granted.

In affirming the order of the superior court, this court noted that the third arbitrator was selected May 23, 1902, on which date the twenty day period within which the board should report began to run. This arbitrator returned from his journey to Alaska not later than June 11th, or at least one day within the time limited for the making of the award. It conclusively appeared that none of the parties nor any of the arbitrators paid any attention to the matter until July 7th, when some books of account were called for, and that three days thereafter, and before any award was filed, one of the parties to the original agreement, the plaintiff in the action, served formal notice of revocation. The award was filed five days later. The delay in filing the award was very much greater than in the case at bar, and one of the parties had filed a formal revocation or repudiation of the award before it was filed. Upon the facts in the case cited, this court properly affirmed the judgment of the superior court quashing the award, but the case is not controlling here.

█ Here, the agreement to submit to a board of appraisers the differences between the parties was in accord with an established policy, resulting not only to the great advantage of the parties, but to the public at large. The expected appraisal was relied upon in

good faith by many employers, and by a much larger number of employees. Apparently, the appraisers devoted much time and effort to the preparation of their report, to which all agreed. Nothing which the parties agreed to do under the contract depended upon the filing of the report. The trifling delay in filing the award could make no possible difference to anyone. The essence of the matter was to settle what was apparently a bitter dispute between employers and employees and enable the fishing to proceed, thereby avoiding great loss to all parties concerned.

The question presented is one of difficulty, and both parties to this appeal cite authorities which are persuasive and entitled to careful consideration. We are convinced, however, that it should not be held that the slight delay in filing the award should render the award void. The inconsiderable departure from the time condition of the contract had no pecuniary or other importance. To rigorously enforce the time condition of the contract would, in effect, impose a heavy and unreasonable forfeiture against appellants. We are therefore of the opinion that the trial court erred in holding that the award made was unenforcible because the board's report was filed two days later than the date fixed in the contract between the parties.

Respondents contend that, in so far as appellants are concerned, the award should not be judicially enforced, because the board, in making the award, proceeded on a fundamentally wrong basis, without sufficient knowledge of the facts, and without proper consideration thereof. The trial court found against respondents' contention, and the evidence preponderates in favor of this finding. The general rule is that, in the absence of mistake, arbitrary or capricious action, or fraud, the value fixed by appraisers is conclusive upon the parties. 3 Williston on Contracts, § 802. This court

has approved that rule, using the terms "palpable mistake," "gross mistake," and "arbitrary and capricious action." *McDonald v. Lewis,* 18 Wash. 300, 51 Pac. 387; *McKivor v. Savage,* 60 Wash. 135, 110 Pac. 811; *Cervien v. Erickson Const. Co.,* 94 Wash. 500, 162 Pac. 567; *Dickson v. Darnell,* 98 Wash. 301, 167 Pac. 937; *Peterson v. Granger Irr. Dist.,* 137 Wash. 668, 243 Pac. 847; *McLaughlin v. Orient Ins. Co.,* 138 Wash. 82, 244 Pac. 254; *Sloane v. State,* 161 Wash. 414, 297 Pac. 194.

Respondents argue that a comparison of the prices paid to independent fishermen in the different fishing districts of Alaska for red and pink salmon vary so greatly that the higher amounts awarded to appellant independent fishermen should be held arbitrary and capricious. It appears, however, that the prices paid for fish in the different districts have always varied, and that, in the Copper river and Prince William sound area, the fishermen have very generally received for their fish prices higher than those paid fishermen in other areas. It appears from the report of the board that the prices to be paid appellants for at least one variety of fish were reduced from the 1937 scale more than the prices to be paid in another fishing district.

It appears beyond question that the board made a detailed and thorough examination of the elements proper to be considered in making the awards. The questionnaires sent to the packers and the answers thereto were not introduced in evidence. It appears, however, that the answers to the questionnaires were scrutinized and analyzed by the board, and were properly given weight in making the report. The board considered a great many factors—freight rates, the customs of different districts, the prices at which fish were sold and which had been paid during previous years, the cost of transporting and maintaining the employees, the cost of making the packs in each can-

528

nery, etc. The testimony of the chairman of the board indicates that all these, and indeed other factors, were considered in making the final report.

The evidence preponderates in favor of the finding of the trial court on this phase of the case.

The amounts due appellants and their assignors under the award were agreed upon, if the award should be held valid and binding.

The judgment appealed from is accordingly reversed, with instructions to proceed in accordance with the views herein expressed.

JEFFERS, MILLARD, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 110 P. (2d) 190.