**CESSNA AIRCRAFT COMPANY, a corporation, Appellant,**

v.

**AVIATION, Inc., a corporation, Appellee.**

No. 5492.

United States Court of Appeals
Tenth Circuit.

April 9, 1957.

Rehearing Denied April 25, 1957.

William Tinker and Hugh P. Quinn, Wichita, Kan. (Getto McDonald, Arthur W. Skaer, Jr., William Porter, and John E. Lancelot, Wichita, Kan., were with them on the brief), for appellant.

Wayne Coulson, Wichita, Kan. (C. H. Rosenstein, Foster V. Phipps and Jay W. Whitney, Tulsa, Okl., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action in which Aviation, Inc., the appellee, sought to recover a commission from appellant, Cessna Aircraft Company, for the sale of an airplane. The trial court directed the jury to return a verdict for plaintiff for $10,853.23 and interest.

The facts concerning which there is no dispute are these. On November 17, 1953, Cessna entered into a distributor's contract with Aviation, Inc., of Tulsa, Oklahoma, under which Aviation, Inc., was appointed Cessna's distributor to sell Cessna's airplanes in territory assigned to it. The contract contained many provisions not necessary to note in detail. In part it required the distributor to develop to Cessna's satisfaction sales of its airplanes in the territory assigned to it, to maintain an adequate sales staff, to develop sales potentialities and proper customer relations, as well as other provisions tending to promote sales of airplanes. Paragraph 6 of the contract is captioned "Prices and Com-

missions." In it Cessna agrees to furnish distributor current prices of aircraft products and to furnish distributor "schedules of commissions and terms of purchase," and agrees to keep distributor advised of any changes in said prices and commissions.

The distributor's contract did not set out the commission or compensation due the distributor for the sale of Cessna's products. It did, however, require Cessna to provide the distributor from time to time with schedules of commissions and prices. By registered letter dated December 29, 1953, addressed to distributors only, it advised that a distributor having executed an "A" Contract would receive a 20% commission and that one holding a "B" Contract would receive a 10% commission. Before a distributor was entitled to the 20% commission, it was required that an "A" Contract be signed "A. When the first 310 is brought to his place of business for the Cessna Air Fleet Show" or "B. Not later than 90 days prior to the estimated delivery date of the Distributor's first Model 310. This means that the Distributor or Dealer will decide by this date whether he desires to have an 'A' or a 'B' Contract."

The contract contained a cancellation clause giving Cessna the option to cancel the contract on thirty days' written notice. Aviation, Inc., had the option to cancel by giving five days' written notice. The termination clause provided that a termination of the agreement operated as the cancellation of all unfilled orders of airplanes and that the "Company shall within thirty (30) days refund any deposits placed on such unfilled orders."

Aviation, Inc., procured a written order from L. L. Dresser for the purchase of one Model 310 Cessna Aircraft for $49,950 for future delivery. It notified Cessna of the sale and transmitted distributor's order No. 93 for such aircraft, together with a deposit of $5,000, which Dresser had paid to the distributor. Thereafter, on June 21, 1954, before the order had been filled, Cessna by written notice exercised its option to cancel the distributor's contract effective July 21, 1954. It did not, however, return the deposit. It thereafter completed the sale to Dresser, delivered the aircraft to him, and collected the balance thereon.

Aviation, Inc., took the position that it had earned the 20% commission due under an "A" contract. It instituted this action to recover such commission. The trial court agreed, directed the jury to return the verdict, and entered judgment for $10,853.23.

■ Cessna's contention that the distributor's contract did not create an agency or broker relationship is not well taken. Throughout the contract it speaks of the distributor's commissions. Paragraph III of Cessna's letter of December 29, 1953, to its distributors is headed "Commissions." It fixes a commission for an "A" Contract. Appellant in its brief speaks of Aviation, Inc.'s compensation or commissions. But, in any event, a decision of the technical legal relationship is immaterial to the question presented for decision. Call the relationship what you will, the question is whether Aviation, Inc., is entitled to recover for services performed under its contract and the answer is controlled by the same legal principles, whether we call its right of demand a commission or compensation.

There is no conflict in the facts nor in the legal principles of law. It is only a question of applying recognized principles of law to the particular facts of this case. A great number of authorities are cited by the parties to this appeal, all of which declare sound principles of law. We do not deem it necessary to cite or analyze these cases because each was decided upon the peculiar facts thereof. In none of them are the facts identical with the facts of this case.

Wrongful abrogation of the distributor's contract is not involved in this case. Cessna had the right to cancel the contract and cancelled it in a proper and lawful manner. The only question is what, if any, were its duties and obligations to Aviation, Inc., with respect to the valid

but unfilled purchase order for the Dresser airplane placed with it prior to the cancellation of the contract. With respect to that answer, we look to the contract. Section C, Paragraph 12(d) provides that the "Termination of this Agreement shall operate as a cancellation of all unfilled orders for airplanes, * * *. Company shall within thirty (30) days refund any deposits placed on such unfilled orders." Had Cessna returned the $5,000 deposit, this order would have been cancelled. It would have no demands against Aviation, Inc., and would owe it nothing because of this order. It, however, retained the full benefit of the contract, carried it out, delivered the airplane, collected the balance of the purchase price, but claims it owes Aviation, Inc., no commission or compensation for procuring such order.

■ Although the distributor's contract terminated all relationships between the parties with respect to future transactions, because of Cessna's refusal to cancel out this order as provided by the contract, it remained in force with regard to the unfilled Dresser order. To cancel out this order, it was required that Cessna return the $5,000 deposit. This it chose not to do. Rather, it kept the deposit and completed the sale. Cessna could not take the benefits of the order and at the same time deprive Aviation, Inc., of its compensation.[1]

■ Cessna contends that the "Request For Application of Deposit" form which was executed by Aviation, Inc., superseded that portion of the distributor's contract requiring the return of the deposit in order to cancel out unfilled orders. When Cessna received the $5,000 deposit, it sent Aviation, Inc., a copy of a form called "Distributor Request For Application Of Deposit" for its execution. The form was executed and returned to Cessna. In part it provided that "I/we agree that in event of my/our inability to accept delivery of the airplane for any reason, Cessna Aircraft Company may apply the deposit against the airplane ordered by Purchaser and may make delivery of the airplane and collect payment for it from Purchaser at its option * * *." Continuing, the form states that Cessna accepts the order and deposit subject to all the terms of its distributor agreement. Since this form was executed subject to all the terms of the distributor's contract, it cannot be said that in any way it modified the terms of the distributor's agreement. In fact, there is no conflict between the two instruments. The request for application of deposit form merely gives it an option which it did not have under the original agreement to retain the deposit and complete the sale. It did not require Cessna to keep deposits on unfilled orders. It states that Cessna *may*, not must, apply such deposits to the purchase price of unfilled orders upon cancellation. Cessna thus had two options with respect to unfilled orders. It could cancel them and return the deposit, or it could treat them as in full force and effect under the terms of the contract and apply the deposit to the purchase price. It chose the latter option with respect to the Dresser order.

Finally, it is contended that in any event Aviation, Inc., was entitled only to a 10% commission because it had not executed an "A" Contract. It is conceded that at the time of the cancellation the time had not arrived when Aviation, Inc., was required to make its election. It is clear from the record that Aviation, Inc., would have executed an "A" Contract. The main requirement for an "A" Contract was that the distributor order a demonstrator and this had been done. In addition, it also had orders for four additional 310 airplanes. Cessna's Sales Manager testified that Aviation, Inc., had told him that it intended to sign an "A" contract and that Cessna had no

1. Willcox & Gibbs Sewing Machine Co. v. Ewing, 141 U.S. 627, 12 S.Ct. 94, 35 L. Ed. 882; Gillett v. Corum, 7 Kan. 156;

Southwestern Port Huron Co. v. Wilber, 75 Kan. 175, 88 P. 892.

reason to doubt that Aviation, Inc., would comply with the additional requirements entitling it to an "A" contract.

There is no doubt from the record that the condition requiring the signing of an "A" Contract would have been met. "A condition may be excused without other reason if its requirement will involve extreme forfeiture or penalty, and its existence or occurrence forms no essential part of the exchange for the promissor's performance."[2] Under the facts of this case it does not lie with Cessna to insist that Aviation, Inc.'s commission or compensation be limited to 10%. We think the judgment of the court is correct and it is, therefore, affirmed.

2. Restatement, Contracts § 302; Harris v. Pacific Mutual Life Ins. Co. of California, 10 Cir., 1943, 137 F.2d 272; Hegeberg v. New England Fish Co., 1941, 7 Wash.2d 509, 110 P.2d 182, 187.