**CESSNA AIRCRAFT COMPANY, a corporation, Appellant,**

v.

**AERIAL SURVEYS OF PITTSBURGH, INC., a corporation, Appellee.**

**No. 6073.**

United States Court of Appeals
Tenth Circuit.
Aug. 27, 1959.

Hugh P. Quinn, Wichita, Kan. (Getto McDonald, William Tinker, Arthur W. Skaer, Jr., William Porter, Alvin D. Herrington, and Darrell D. Kellogg, Wichita, Kan., on the brief), for appellant.

Wayne Coulson, Wichita, Kan. (Homer V. Gooing, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, and Gerrit H. Wormhoudt, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and LEWIS, Circuit Judges.

BRATTON, Circuit Judge.

Cessna Aircraft Company, hereinafter referred to as Cessna, was engaged in the manufacture and sale of aircraft products. By written contract, Aerial Surveys of Pittsburgh, Inc., hereinafter referred to as Aerial, was a distributor in Pennsylvania of Cessna products. The last contract into which Cessna and Aerial entered was dated November 9, 1953; by its terms, it expired December 20, 1954; and it was not extended or renewed. Under the terms of the contract, Aerial was to receive a commission of twenty per cent on the sale price of all Model 310 airplanes sold by it and a commission of twenty-five per cent on the sale price of all extra equipment on such airplanes. Aerial sued Cessna to recover a commission upon the alleged sale of a Model 310 airplane to Moyer Bros., of Altoona, Pennsylvania, and a commission on the sale price of the extra equipment on such airplane. In its answer, Cessna admitted certain facts but denied that it was indebted to Aerial in any amount; and it admitted certain facts in the course of a pre-trial conference. The cause was tried to a jury; and in its opening statement to the jury, Cessna admitted certain facts. When Aerial rested its case in chief, both parties moved for a directed verdict. A verdict was directed in favor of Aerial; judgment was entered upon the verdict; and Cessna appealed.

█ It is contended that the relationship between the parties to the contract was not that of principal and agent. The contract expressly provided that the relationship between the parties was not that of principal and agent. And it further provided that under no circumstances should Aerial be considered an agent of Cessna. It is manifest that the contract was drawn with the view of preventing the creation of the relationship of principal and agent between the parties. But that is not decisive of the rights of the parties. Under the terms of the contract, Aerial was entitled to remuneration at the rates specified in the contract for services rendered in effectuating completed sales of airplanes and extra equipment for such airplanes whether the relationship between the parties was that of principal and agent or otherwise, or whether the remuneration be called a commission or other compensation. Cessna Aircraft Co. v. Aviation, Inc., 10 Cir., 243 F.2d 815.

█ The substance of the further contention is that under the terms of the contract, in order to be entitled to a commission Aerial was required to do more than secure an order for an airplane from its retail customer; that Aerial merely obtained from Moyer Bros. an order for an airplane together with a deposit of $5,000 in connection therewith; that the order was never completed and the airplane was never delivered to Moyer Bros.; and that in these circumstances, Cessna is not liable to Aerial in any amount. From the

admissions of Cessna, from its books and records introduced in evidence, and from statements made in its brief, these facts are brought into focus. On February 12, 1954, Aerial transmitted to Cessna an order for a Model 310 airplane with certain extra equipment. A check of $5,000 was sent with the order as a deposit. The order was in the name of Aerial. It did not disclose the name of the retail customer of Aerial. On February 17, Aerial sent to Cessna a printed form showing that the airplane was being purchased for A. C. Moyer. Cessna accepted the order and bound itself to make delivery of the airplane to Moyer, with delivery scheduled for approximately April 21, 1955. In July, 1954, Moyer advised Aerial that he desired to cancel the order and requested return of the deposit. Aerial advised Cessna of Moyer's desire. Cessna suggested to Aerial that it endeavor to keep the order in effect. The order was not canceled and the deposit was not returned. On February 3, 1955, Cessna received a letter from Moyer in which he expressed a desire to get out of the order and requested return of the deposit. Cessna issued its check for $5,000, and directed Harris, its regional representative in Pennsylvania, to deliver the check to Moyer. Harris went to Altoona but Moyer was absent. The two did not meet and the check was not delivered. F. E. Grazier conducted a flying school at Bedford, Pennsylvania. The business was conducted under the name of Grazier's Bedford Airways. Grazier learned from Harris that Moyer desired to terminate the order for the airplane previously placed with Aerial. Grazier and Moyer established contact with each other and Moyer became financially interested in Grazier's Bedford Airways. Grazier's Bedford Airways became an authorized dealer for Cessna products. In April, 1955, Grazier's Bedford Airways submitted to Cessna an order for a Model 310 airplane. And in connection therewith, Moyer wrote Cessna authorizing it to transfer the $5,000 previously deposited with the order placed by Aerial to a deposit in that sum upon the order being placed by Grazier's Bedford Airways. And in the letter, Moyer released Cessna of any obligation respecting delivery under his original order as well as disposition of the $5,000 deposit which had been applied against such original order. Harris, regional manager for Cessna, prepared the order which Grazier's Bedford Airways submitted. He also prepared the form of the letter which Moyer wrote to Cessna. And he directed that four copies of the letter on Moyer's letterhead be submitted with the order. Cessna accepted the order submitted by Grazier's Bedford Airways, transferred the $5,000 as directed by Moyer, and delivered the airplane to Grazier's Bedford Airways in July. The airplane was invoiced to Grazier's Bedford Airways, and a bill of sale was executed conveying it to such corporation. But the balance of the purchase price was paid by Moyer Bros. One check given by Moyer Bros. to Cessna was for $51,362.49. Considered in their totality, the facts and circumstances amounted to a substitution of the second order for the airplane for the first order. The first order was obtained by Aerial and the substitution was made without its approval or consent. It is clear that if the sale to Moyer had been completed pursuant to the first order, Aerial would have been entitled to the commission even though the plane had been delivered and the transaction completed after termination of the contract between Cessna and Aerial. Cessna Aircraft Co. v. Aviation, Inc., supra. And since the second order merely constituted a substitute for the first, when the sale of the airplane was completed and the purchase price therefor was paid by Moyer Bros., Cessna became liable as a matter of law to Aerial in an amount equal to the commission specified in the contract between Cessna and Aerial. Cessna being liable to Aerial as a matter of law, the issue of liability was not one for the jury.

■ The judgment is challenged upon the further ground that by directing the verdict and entering the judgment

upon such verdict for the full amount of the difference between the retail price of the airplane and the accessories on one hand, and the cost of the airplane and accessories to Aerial on the other hand, Cessna was not allowed to offer evidence with respect to a discount from the suggested retail price which Aerial was to give Moyer; and that Cessna was also not allowed to offer evidence concerning a trade-in which Aerial was to take from Moyer, although reference to both matters had been made in the pretrial conference and in the opening statement. It was pleaded in the complaint and admitted in the answer that under the contract, Aerial was entitled to a commission of twenty per cent of the sale price of all Model 310 airplanes sold by it and a commission of twenty-five per cent upon the retail price of all extra equipment upon such airplanes. It was further pleaded in the complaint that the basic price of the Model 310 airplane referred to therein was $49,950; that the commission upon such airplane was $9,990; and that the commission upon the extra equipment on such airplane was $4,088.88. The two items of commission totaled $14,078.88, and the prayer was for judgment in that amount, with interest. The answer was completely silent in respect to a discount or a trade-in. No issue of that kind was tendered. In the course of the pre-trial conference, the position of Cessna was stated in respect to amount. It was stated that in the event Cessna was liable in any amount, according to its computation the very greatest amount would be $13,291.-13; and the judgment was for that amount. It was further stated in that connection that the selling price of the airplane was $49,950; that the commission thereon would come to $9,990; that such airplane went out with $600.50 worth of twenty-five per cent commission accessories; that the rest of the accessories which totaled $15,755 bore only a twenty per cent commission; and that the difference between the computation of Aerial and that of Cessna was about $1,800. Nothing was said then about a discount or a trade-in. When the parties interposed their respective motions for a directed verdict, and the court announced its conclusion that the motion of Aerial should be sustained, nothing was said concerning a discount or a trade-in, or a desire to introduce evidence relating thereto. And the motion for new trial was completely silent in respect to the denial of an opportunity to introduce evidence relating to a discount or a trade-in. No issue of that kind was before the trial court and therefore Cessna was not prejudicially denied a right to adduce evidence relating thereto.

The judgment is affirmed.